### STATE v. ISAAC LOFTLAND.

Court of Quarter Sessions. Kent. May 14, 1800.

*Rodney's Notes.*

*Ridgely* [for State]. *Bayard, Vining, Rodney* [for defendant].

James Neal and Clement Clark, indorsed prosecutors.

Jonathan Manlove, sworn. On the 18th of March, 1799, was called on to go with James Neal to defendant's house to search, found him in bed, said we might search, and got up, took out of his pocket a small bunch of keys. He had on black pantaloons and waistcoat. He unlocked his clock case and took a bag with

considerable quantity cash, and out of his desk a small bag, emptied it on the floor, and said it was all his. If any more was found, he did not claim it. Clement Clark came in, and I saw a small piece which I have in my hand that answered the description of a piece which N[eal] and Clark had lost. It came out of the small bag. Clark claimed it. Loftland said it might be his, but he did not know how he came by it. The day following Neal called on me and told me he, Loftland, said he had found the money in his stable, where his negro boy hid it, and was ready to deliver it up, when I got there, [he] was counting it on counter, lacked about eight or ten dollars which he accounted for in this way, *viz* [——] [1] were dollars, a few half and quarter dollars, amounting money returned. [I] have had the small piece ever since, only what time Attorney General had it.

Cross-examined. Loftland did not seem alarmed. The small piece had marks. The large bag contained probably a thousand or 1500 dollars, small bag about sixteen dollars.

James Neal, sworn. On the seventh day of March went to store, found a door open, and several pieces [of] goods thrown down. Discovered my money, which was in a tea chest under the counter was gone, went and called my partner about 9 or 10 o'clock. We went to search Loftland's, his negro boy and young child in the room, he was covered up in bed with all his clothes on but his coat and shoes. I had never seen the small piece before Jonathan found it. Clement came in and said he would swear it was his. Loftland said if it was he did not know how he came by it. We had been keeping store there a month and two or three days. We rented the store of Loftland. He lived under same roof, and [there] were two doors [which] opened into our store from his dwelling, one above and one below. The lower door was locked, and we had the key; the upper we supposed was fast by a nail over the latch. We found the nail out in the morning. Day after we searched, Loftland called me out, and we went to the stable, found a negro boy pulling hay out of a hole in the stable floor. Loftland asked him if he did not know where he found it; at length he pulled out our bag with money. We went into the parlor, told the boy to put the bag down on the table, asked him where the rest was, boy said upstairs, told him to fetch it, then Loftland said boy had a key would unlock our door; he pulled a key out of his pocket, and it unlocked our door. The boy then came down with eight or ten dollars in his hands. Loftland asked him if that was all. "Yes Sir." I went out, left Nathaniel Reessum in with Loftland, who

---

[1] Blank in manuscript.

came in before he unlocked the door. In our bag there was some crowns, dollars, a half, a quarter, an eighth, and a sixteenth, in all $172, though do not know of my own knowledge.

Cross-examined. Loftland had corn in our room over the shop. His boy went through the shop about twice a day to get corn, and through our room above. Loftland said he was sick when we found him in bed. We bought the goods of Loftland. Clark and Purdon bought first of Loftland, and I bought Purdon out. There was $150 when I left home, had been kept in the tea chest. The west door had been fast several days. The money that was returned I took to be the same that we lost, particularly one half crown.

Clement Clark. James Neal told me the shop was broke, one door open, and one window unkeyed. I found I. George there who said either him or Isaac Loftland had the money and advised us to search. I know this piece of money. I took it of Luke Watson and put it into the bag with other money. The whole amount of money in bag was more than $172. It belonged to Mr. Neal and me.

Cross-examined. I received this piece the fifth, laid in drawer the fifth, and was put in bag the sixth. The notch and mark was on this piece when I received it. I fastened up the shop that evening myself; the west door was bolted. In the forenoon I examined the door upstairs, and the nail was over the latch. The goods were thrown down about the floor behind the counter. Key was not in the door that night.

Luke Watson, sworn. I passed a piece of money to Mr. Clark. This is the piece. I have never seen it since till now. I got it of my daughter.

John Pettigrew, sworn. Luke Watson brought a piece of money into N[eal's] and Clark's store. He disputed it. I had a nail with which I marked it. I believe it to be the same.

Martin Duval, sworn. Luke Watson showed me this money. I cut it; this is the same piece I cut just by the crown head.

Abner Dill, sworn. Luke Watson two evenings before this happened brought this same piece of money to my house, was showing about.

Benjamin Brinckley, sworn. This is the piece L. W. brought to C. store.

Nathaniel Reessum, sworn. The 9th March, 1799, Loftland came to door. Neal told him not to come in. He called Neal out, and afterwards he came back, called me into Loftland's house. I saw a bag Neal said was his, and supposed to be his money. The

negro boy came down with six, eight, or ten dollars in his hand. Loftland said, "You dog, is this all?" "It is." Neal went out. Loftland asked me to help him count the money. He asked me how much they lost. I told him $172. It lacked five or six dollars. He took up some small change and put in his desk and brought enough to make up the sum. Loftland went out and sent the boy in. I asked the boy, etc., which was considered improper evidence. Loftland requested me to try the key which he produced. It locked the door by turning the key twice. I tried it by turning it once. It would not lock. The boy was Loftland's slave, eleven, twelve, or fourteen years old. Never heard anything against him. The boy said he got the money from under a blue chest.

*Vining,* for defendant, opened the case.

Rhoda Dixon. The key was in my possession ever since he, Loftland, was married. I have left it often on the mantle and in the door of kitchen. I was [at] Wye River last Sunday night.

Counsel for the defendant moved, the court that J. Messick should be permitted to give evidence of what he has heard defendant's negro boy say.

*Rodney* contended from this case produced, Esp. 787, the boy's declaration might be given in evidence though he could not be examined himself.

*Bayard.* Where a man is not competent himself as a witness, his acknowledgment may.

Court were of opinion the confessions or acknowledgments of the boy were not admissible.

Isaac Dewes. The lock and key was taken off the kitchen door last August by me.

Attorney General to apply the testimony.

*Rodney* for the prisoner. London Magazine for [——],[2] page 136. Case where a person was found dead and a fork with the initials of prisoner's name, and proof of his changing his clothes and concealing them being bloody, etc. The circumstances were considered as strongly against the prisoner, though it afterwards appeared the foreman of the jury who acquitted the prisoner was the guilty person. Therefore the jury should be extremely cautious in convicting a person from circumstances.

*Vining* commented on the evidence to convince the jury that Loftland's conduct through the whole was that of an innocent man. The boy only was guilty.

---

[2] Blank in manuscript.

*Bayard.* What I most dread in this case is the popular prejudice which seems against the defendant. No positive proof of his guilt. The only proof is the Danish coin. We were able to show you the whole truth, how we became possessed of the money, if we had not been stopped by the Attorney General, otherwise —and this is a hard case, etc. The story of the robber who gave the wig, etc. The case of the old man (from Lord Hale) who was accused of a rape and had a rupture, etc. The case of a young woman who was hung, etc. We have shown you all that from the nature of the case could be done by any man, and yet there is no positive proof of his guilt.

Attorney General. We have proved this property was Neal's and Clark's, that it was stolen, and that it was found on the defendant. From the whole train of circumstances in this case you must be of opinion the defendant is guilty. The jury must be of opinion that either Loftland or the boy was guilty, and I think you will not say he was the felon.

CHIEF JUSTICE BOOTH. Positive proof of a felony can seldom be given. Circumstantial evidence is sufficient to warrant the jury to convict the party; but that should satisfy the jury. The goods being found with the party is a strong presumption of his guilt, and especially if the party cannot account for his getting them into his possession.

Verdict for [——].[3]