## STATE v. ELIJAH JONES CROCKER and ROBERT TRUSTON.

Court of Quarter Sessions. Kent. December 7, 1801.

*Rodney's Notes.*

*Ridgely,* Attorney General [for the State]. *Vining,* assigned counsel. *Henry Ridgely,* volunteer [for defendants].

Thomas Lowber sworn. On Monday, September 9, Thomas Smith and myself, about 9 o'clock, we left the store all safe. Next morning found the store broke open and floor covered with goods, and many gone. All those laid in the indictment, and I suppose five or six hundred dollars more was lost or gone, the window was broke open. Nobody lodged in the store. Had not seen Crocker there for two weeks before. Had been there two weeks before election and after was often in ·the store. Did nothing for support. Said he came from Massachusetts. I found chintz etc. in father's parlor soon after he was taken, which was Thursday, was two weeks. The goods there found were mine, and the same that were stolen.

Cross-examined. Had not seen Crocker for two weeks before the store was broken. Had slept in same bed with him. Gone shooting with him. Have played cards with [him] for diversion. Left but four green dollars in drawer; it was gone. I keep no account of goods I sell.

Peter Lowber, sworn. A horse of William Traverse's was stolen the night the store was broke. Eight days after on Wednesday at daybreak [I] went out. I saw a W. horse coming up from D. B. into F. I saw a man walking and one in the carriage. Crocker came ahead of it nearly to my porch. Was a hundred yards before it. I hailed, "Why travelling so early." He come up, shook hands, asked if I had not seen him in T. Lowber's store. I[2] said, "Yes, I'll have you apprehended or examined." He said, "You shan't," and snatched away and ran. I called out to pursue. As I turned around saw Truston jump out of the carriage; was about thirty steps off. Crocker ran down the causeway. Negro boy pursued and was near taking him. He took to the cripple. We surrounded it for two hours, when the Negroes I sent in, found him. I called to them and they brought him out, was all over wet, had stripped his handker-

[2] Manuscript reads "He."

chief and stockings off, said he neither knew the man, horse, or carriage or had seen him. Truston had been taken. I went and asked who was concerned and how he came to jump out. He said another man asked me to get up and ride in the carriage, and he ran another way. I asked him how he came to get asleep. He said it was not him but Crocker at Glasgow's. He acknowledged he watched the morning after the store was broke. The goods we found in the carriage was carried into my parlor. Some of them I knew to be T. Lowber's. The same horse and chair William Allander now has here.

Cross-examined. Crocker had a flag handkerchief drying. Frederika fifteen miles from Whiteleysburg. Had seen Crocker but once at T. Lowber's. On Wednesday eight days after the store was broke I met Crocker in Frederika.

William Curtis. The morning they were taken, [I] saw a carriage with white horse at Lowber's. The men were gone, and the goods were taken out of carriage; they had some of them and were carrying them in. Saw defendant Crocker brought out, was wet, went to White's garret. Lowber told Truston he was at Glasgow's and went to sleep. He replied no, he did not. Crocker went to sleep, but he did not. Said he had been all night in a fodder. He got up and overtook a man in the carriage over the causeway. Was asked, and got up, and rode. The man ran off when they were stopped. Glasgow said Thursday (and Lowber said Wednesday). Defendants were there. On Friday last at prison door T. L. said Crocker had been a hundred or a thousand times behind his counter, had helped to unpack the goods and had never treated a man so well. P. L. said a Negro was seen on a grey horse next morning after store broke with some goods. Truston was asked to bear evidence against Crocker. He said he knew nothing, would rather take what the law would inflict than swear false.

Samuel White offered. Went out, saw horse and carriage standing near P. L.'s gate; W., horse, negro man, and W. aforesaid. Robbers run, one towards wharf. We went down towards the wharf, saw Truston down there, (marked the mud of his clothes) and took him up. I saw some goods in the carriage, a piece [of] green cassinette a piece [of] cotton, etc. They were carried into Lowber's house by his negro woman. Truston said had been to Bal., was coming across, got belated, went into a fodder house, come out, overtook a man in the horse and carriage, got up in it to ride at the man's request. When he came up, hearing them call out robbers, etc., he jumped out and ran. Had no money, [he] said.

Cross-examined. Truston acknowledged he had been under storehouse. The goods were some on box and some in the foot of carriage. Were several black people there before me.

William Allander, sworn. I know the prisoner Crocker. This day three weeks first time I see [him] at my house in Wilmington. He came in the evening, brought a negro man of Wilmington and asked to hire a horse and chair. Said he was going to B. Bird, was to be back Wednesday evening, had a partner, wanted to take with him to see about getting wood cut. In the morning I let him have this white horse and chair. Told me he was going on serious business, and not frolicking. I called at the house in Chicken Alley where he told me he lived on Friday, was uneasy. Woman said she imagined he would certainly be back. About 9 o'clock P. L. came etc. I have lived in Wilmington since last spring, was a year, but have been acquainted there five or six years. Negro told me he had carried him down to P. Penn or B. Bird five or six weeks ago.

Objection that what the Negro said in presence of Crocker to Allander should not be given in evidence. Overruled PER CURIAM.

Cato Hame lives in Wilmington and has done for ten or twelve years.

William Hukill. I know both the defendants. They come to our house last Tuesday was a fortnight, in a carriage together about sunset (at B. Bird) took supper and had their horse fed. Set off, they said, for cross-roads, was a white horse, etc. Saturday was a week before they stayed all night, and left there about sunrise, said if they had luck they would reach friend Loper's that night; were on foot.

*Vining* for defendants or prisoners.

Thomas White for prisoners. About September 20 Crocker came to my house and continued there till the election. He then went up to Wilmington and about eight days after came back and remained eight days more there. Saw no misbehaviour of his. Had opened my desk and he saw my money and letters in the desk, had an opportunity of getting the key of the desk etc. Great intimacy between Lowber and him. Goods were stolen on Wednesday morning or Tuesday night. Crocker had been gone a week or ten days, came from Barnstable.

French Battle, sworn. The day after the election in the P. at D. Cook's, Mr. Ridgely called me out and inquired of Crocker's character, etc. and requested me to ask Cook to inform him, Crocker, if he did not leave Dover he would probably be taken up and confined. He set off next day.

Daniel Cook, sworn. I spoke to Crocker about his being taken up, etc. He said he had been convicted of some offense, and was pardoned by Governor McKean.

Holles. Truston was armourer of the ship ten or twelve months, heard nothing against him.

French McMullan. The prisoner was introduced at Cantwell's bridge as a gentleman, afterwards drank tea at Doctor Tilton's, was so considered.

Abraham Pierce. Crocker was a bad character, passed for Jones at cross-roads, Crawford at Philadelphia.

Richard Herrington sworn.

Attorney General. We have proved, etc.

*Henry Ridgely* for prisoner. 4 Bl.Comm. 350, presumptive evidence should be received with caution. 2 Hale P.C. 289, 290; better that five guilty escape [than] that one innocent suffer. 1 Hale P.C. 635, 636; the charge was positively proved, yet the prisoner was found incapable of perpetrating the crime. 3 Co. Inst. 29, proofs to convict should be clear and manifest.

*Vining* for prisoner. Hale P.C. 509.

Crocker, the prisoner, by permission of the Court, made a speech in his own defense in which he cited some cases from Exodus etc. and insisted on the jury not convicting him on presumption.

Attorney General in conclusion. Presumptive evidence is sometimes better than positive. The cases produced by counsel go upon the principle that the dead body was not found etc.

PER CURIAM. The question for you to decide depends on the evidence, whether guilty or not. The fact should be proved, but positive proof alone is not necessary to convict. Presumptive evidence, where there is a concurrence of circumstances convincing the jury, is sufficient. In civil cases a preponderance of evidence is sufficient for you to convict; in criminal, you should have proof.

Verdict, guilty.