STATE vs. CALVIN C. McCALLISTER and WILLIAM G. LITTLE.

*Criminal    Law—Indictment—Malicious    Mischief—Demurrer—
Malice,   how   Shown—Joint   Defendant;   Statements   of—
- - Evidence—Statute—Accomplice.*

1.   Demurrer to an indictment for malicious mischief overruled.

2.   Malicious mischief is a common law offense, and may be defined to be, any malicious or mischievious injury, either to the rights of another, or to those of the public in general.   It includes all malicious physical injuries to the rights of another, which impair utility, or materially diminish value.

3.   Malice is a necessary ingredient of such offense, but  is not confined specifically to the owner of the property destroyed or injured.   Wilful or wanton cruelty or injury to, or destruction of property, committed under such circumstances as to indicate a malignant spirit of mischief, is sufficient to constitute the offense.

4.   Malice may be shown by proof of wilful and wanton acts, or it may be inferred from attendant facts and circumstances.

5.   The declarations of one joint defendant, as to statements made by the other will not of themselves bind the other unless made in his presence or by his authority.

6.   When the malicious mischief charged, consists in the cutting down of telegraph poles, resistance made to the erection of other poles because the arms would extend beyond the limits of the highway and over the defendant's farm, would not, as an  independent fact, if made in good faith, warrant the inference of defendant's guilt.   But such resistance may be considered by the jury, with the other evidence, in determining the question of the innocence or guilt of the accused.

7.   The law respecting accomplice, circumstantial evidence, conflicting evidence and reasonable doubt, stated.

(*March   15,   1909.*)

LORE, C. J., and BOYCE, J., sitting.

*Andrew C. Gray*, Attorney-General, and *Josiah O. Wolcott*, Deputy Attorney-General, for the State.

*Levin Irving Handy* and *Wilbur L. Adams*, for the  defendants.

Court of General Sessions, New Castle County, March Term, 1909.

INDICTMENT FOR MALICIOUS MISCHIEF (No. 20, January Term, 1909). The material parts of said indictment are set out in the charge of the Court.

When the case came on for trial, counsel for defendants demurred to the indictment, assigning the following causes:

"1.   That it does not appear that the said four poles, commonly called telegraph poles were erected and standing at a place where the said poles might be lawfully erected and stood by the said, The Western Union Telegraph Company.

"2.   That it does not appear that the said four poles, commonly called telegraph poles were not erected and standing on the land of the said defendants without any right or permission to the said, The Western Union Telegraph Company, to erect or stand said poles on said land.

"3.   That it does not appear that the alleged injury to the said personal property of the said, The Western Union Telegraph Company was done secretly, in the night-time, or in such a way as to inflict peculiarly wanton injury, nor that it was accompanied by any breach of the peace."

The demurrer was overruled.

BOYCE, J., charging the jury:

Gentlemen of the jury:—The defendants, Calvin C. McAllister and William G. Little, are indicted for the offense commonly known as malicious mischief.

The indictment contains seven counts, the first of which is as follows:

"The Grand Inquest for the State of Delaware and the Body of New Castle County on their oath and affirmation, respectively, Do PRESENT, that Calvin C. McAllister, late of Mill Creek Hundred in the County aforesaid, and William G. Little, late of Mill Creek Hundred in the County aforesaid, on the sixth day of

October in the year of our Lord one thousand nine hundred and eight, with force and arms, at Mill Creek Hundred in the County aforesaid, unlawfully, wantonly, wilfully, maliciously and mischievously did cut down four poles, commonly called telegraph poles, on which said poles were then and there fastened sixteen certain wires, commonly called telegraph wires, and did then and there and thereby destroy the said poles with the said wires, the said poles and the said wires being then and there the property of the Western Union Telegraph Company of the value of one hundred dollars, to the great damage of the Western Union Telegraph Company, with intent then and there and thereby to injure the said the Western Union Telegraph Company, against the form of the Act of the General Assembly in such case made and provided and against the peace and dignity of the State."

The second count is as follows:

"And the jurors aforesaid, upon their oath and affirmation, respectively, as aforesaid, do further present, that Calvin C. McCallister, late of Mill Creek Hundred in the County aforesaid, on the sixth day of October in the year of our Lord one thousand nine hundred and eight, with force and arms, at Mill Creek Hundred in the County aforesaid, unlawfully, wantonly, wilfully, maliciously and mischievously did cut down four poles, commonly called telegraph poles, on which said poles were then and there fastened sixteen certain wires, commonly called telegraph wires, and did then and there and thereby destroy the said poles with the said wires, the said poles with the said wires being then and there the property of the Western Union Telegraph Company, and of the value of one hundred dollars, to the great damage of the Western Union Telegraph Company and with intent then and there and thereby to injure the said Western Union Telegraph Company, and the jurors do further say that William G. Little, late of Mill Creek Hundred, in the County aforesaid, was then and there at the commission of said misdemeanor, present, aiding, procuring, commanding and counseling the said Calvin C. McCallister therein, against the form of the Act of the General Assembly in such case made and provided and against the peace

and dignity of the State."

You will observe that the first count charges both defendants with cutting the said poles, and the second count charges McCallister, one of the defendants, with cutting the poles, and Little, the other of the defendants, with abetting, procuring, commanding, etc. in the commission of the crime.

The third count is the same as the second, with the substitution of the name of Little for that of McCallister as principal, and the name of McCallister for that of Little as accessory, that is, the third count charges Little with cutting the poles and McCallister with aiding and assisting him.

The fourth, fifth and sixth counts correspond, in their averments, in numerical order, with the first, second and third counts, —except that the charge is not of destroying the poles and wires but of greatly injurying and damaging the same.

The seventh count charges that the offense was committed by some person or persons unknown, and that the defendants abetted, procured, commanded and counselled such unknown person or persons to commit the offense.

By a statute of this State (*Revised Code*, 975, *Sec* 1) it is provided:   "Every person who shall abet, procure, command, or counsel any other person, or persons, to commit any crime, or misdemeanor, shall be deemed an accomplice and equally criminal as the principal offender, and shall be punished in the same manner, and with the same punishment."

If you shall be satisfied from the evidence that one of the defendants did the injury to the property of the company as set forth in this indictment, and that the other of them was then and there present, abetting, procuring, commanding or counseling him in the commission of such injury, you should find both defendants guilty.   Or if you should be satisfied from the evidence that either or both of the defendants abetted, procured, commanded or counseled some unknown person or persons to destroy or greatly injure or damage the property of this company as charged in the indictment, then either one or both of the defendants, if either, so abetting, procuring, commanding or counseling in the com-

mission of the offense, would be equally criminal as the principal unknown offender, and you should find one or both of the defendants guilty accordingly.

It is conceded that the Telegraph Company has acquired a right by prescription, at least to maintain its poles and wires along the highway passing through the McCallister farm, within the limits of said highway. That the poles and wires in front of the said farm were cut and greatly injured, as charged in the indictment, is not controverted.

The importance of this case to the State, to the defendants, to the telegraph company and to the general public is obvious. Indeed, it is a case of very great importance. You have heard the evidence and the arguments of counsel. You have given close and patient attention throughout the case. When you shall have retired to your room to further consider the case and to arrive at a verdict, you should not be moved or influenced by any feelings of prejudice, on the one hand, or of sympathy on the other; or by any considerations whatever, one way or the other, not warranted by the evidence before you. Upon the evidence, and upon that alone, considered in connection with these instructions, you should, and you doubtless will, find your verdict.

The first and most important question for your determination is whether the destruction of, or injury to the company's poles and wires, as set forth in the indictment, was or was not done by the defendants or either of them, or by some unknown person or persons, abetted, procured, commanded or counseled by the defendants, or either of them, to commit the offense.

Upon this subject you have heard the evidence, and we will not attempt to review or recapitulate it, or to express any opinion whatever as to the weight or effect of it, as this is a matter wholly within your province. In this inquiry, as well as in your consideration of the evidence bearing upon every other material point in the case, there are several elementary rules which you should keep in mind. In all criminal cases the law presumes that the accused is innocent until it is proved to the satisfaction of the jury beyond a reasonable doubt that he is guilty. In civil cases,

a preponderance or greater weight of the evidence is sufficient to warrant a verdict in whose favor it is found by the jury; but in criminal prosecutions it is necessary, in order to warrant a conviction, that the jury should be satisfied of the guilt of the accused beyond a reasonable doubt.

You are the sole judges as to the credit and weight of the evidence. Where the evidence is conflicting you should reconcile it if you can, and if you cannot do so, you should accept as true that part of it which you deem worthy of credit, and reject that part which you deem unworthy of credit, keeping in view the interest or bias of the witnesses, if any, their means of information and opportunity of knowing the facts of which they have testified, their demeanor on the stand, their apparent candor or frankness, or lack of it, and to what extent, if any, they are corroborated or contradicted by other testimony, and all the circumstances which tend to aid you in determining the truth or falsity of the testimony.

This indictment is for the common-law offense of malicious mischief, which, in the case of *State vs. Hamilton*, found in *Houston's Criminal Reports, page* 285, tried in this County about forty years ago, was defined to be, "any malicious or mischievous injury, either to the rights of another, or to those of the public in general." It may be defined in general terms as including all malicious physical injuries to the rights of another, which impair utility or materially diminish value.

(25 *Cyc.* 1672; *State vs. Walls*, 48 *Ark.*, 56).

Malice is a necessary ingredient of the offense charged against the defendants, and it must appear from the evidence, either express or implied, in order to sustain the indictment. This Court has never confined malice, necessary to support the offense charged, specifically to the owner of the property destroyed or injured. Wilful or wanton cruelty or injury to, or destruction of property, committed under such circumstances as to indicate a malignant spirit of mischief, is sufficient to constitute the offense of malicious mischief. Malice may be shown by proof of wilful

and wanton acts, or it may be inferred from attendant facts and circumstances.

The declarations of one of the defendants as to the statements of the other defendant would not of themselves bind him, unless made in his presence or by his authority.

In the recent case of *State vs. Collins* ( 5 *Pennewill*, 270), the Chief Justice, in his charge to the jury, made the following appropriate statement of the law on the subject of circumstantial evidence.

"The universal experience of those engaged in the administration of justice shows the absolute necessity of admitting and relying upon circumstantial evidence, in forming our conclusions in regard to the guilt or innocence of accused persons; and when clearly convincing and conclusive, is of equal weight with direct evidence. Indeed it is often the only means of uncovering and proving crimes which are committed in secret and which are concealed by the cunning artifices of the perpetrator. But while this is so, we say to you most emphatically that circumstantial evidence, to warrant a conviction, must be entirely satisfactory, and of such significance, consistency and force, as to produce conviction in the minds of the jury of the guilt of the accused beyond a reasonable doubt. The great rule on this subject is this: that when the evidence is circumstantial the jury must be fully satisfied not only that the circumstances are consistent with the guilt of the prisoner, but they must also be satisfied that the facts are such as to be inconsistent with any other reasonable conclusion than that the prisoner was the guilty party. * * * "

"This is the rule relating to circumstantial evidence, as distinguished from direct evidence. The State claims to have produced in this case both direct and circumstantial evidence.

"But whether the evidence be direct or circumstantial, or both, it must in every case be of such a character as to satisfy the minds of the jury of the guilt of the prisoner beyond a reasonable doubt."

The evidence before you of the conduct of the defendants as

to this telegraph line, and as to the servants and agents of the company owning and operating the same, both before and after the cutting of the poles mentioned in the indictment, may and should be considered by you, in connection with the other evidence before you, in the determination of the question whether the defendants, or either of them, cut the poles, etc., as charged; and also in the determination of the question whether such cutting, etc., if done by the defendants, or either of them, was done maliciously as charged.

A landowner whose property abuts the highway on which there is erected telegraph poles bearing arms or cross-pieces which project beyond the limits of the highway and over his land, carrying wires, may not wilfully cut down or destroy such poles. His redress is in the courts.

The defendants admit the proof of the existence and the interference in the erection of the poles in the place of the four poles, which, it is conceded, were cut, but they claim that the resistance was made because the arms on the poles when erected would extend beyond the limits of the highway and over the Mc-Callister farm. Such resistance, as an independent act, if made in good faith, as claimed, would not in itself warrant an inference that the defendants, or either of them, committed the offense charged, nor would it evince a spirit of maliciousness, but such resistance and interference may and should be considered by you in connection with the other evidence before you, in determining the question of the innocence or guilt of the accused.

We say to you that proof to your satisfaction of the sawing down of the poles by the defendants themselves, or by some unknown person through their procurement or by their command, would sustain the charges of the indictment; but if you find that they, or either of them, as principal or accomplice, did not destroy or injure the poles or wires of the company, any acts of resistance or interference which they may have committed, would not be sufficient alone to sustain the indictment.

The following statute of this State provides a very summary and drastic remedy in cases of trespass upon the property of

another (*Revised Code*, 939, *Sec.* 21):

"If any person shall wilfully enter into, upon, or trespass upon the ways, lands or premises of another in this State, he shall be guilty of a nuisance. Any constable or other conservator of the peace, the owner or occupier of such ways, lands or premises, his agent or employe, or any other person or persons whom he, or any of them may call to their or his assistance, shall have authority to arrest such offenders, either with or without warrant, either upon the premises, or in immediate flight therefrom, and if with warrant, then at any place, and take him before a justice of the peace, or mayor of a city, in the county where the offense is committed; such justice of the peace or mayor, is hereby authorized to determine every such case in a summary manner, and if he shall find such person guilty of the charge, shall for each offense, impose a fine of not more than five dollars and costs."

This statute may be taken into consideration by you in deciding whether any of the arrests of, or interference with the servants or agents of the company by the defendants or their agents, were made in good faith, or for the purpose of hindering or obstructing the agents of the company in the performance of their lawful duties in respect to the telegraph line in question, but this statute could not in any manner justify or excuse the destruction or injury of any part of the telegraph line wholly within the limits of the highway.

If after carefully and conscientiously considering all the evidence before you, you should entertain a reasonable doubt of the guilt of the defendants, or either of them, that doubt inures to their or his benefit, and your verdict should be not guilty accordingly. A reasonable doubt, in law, does not mean a fanciful, vague, speculative, or mere possible doubt, but a serious, substantial, well-founded doubt arising from a candid and impartial consideration of all the evidence, or want of evidence, in the case—such a doubt as would cause reasonable, fair-minded, honest and conscientious men to pause and hesitate in important matters and transactions of life.

If you are satisfied from the evidence, beyond such reason-

able doubt, that the defendants did cut and destroy, or did greatly injure and damage the poles and wires in question, or that one of them aided and assisted the other in so doing, or that they abetted, procured, commaded or counseled some unknown person or persons to commit the offense charged, your verdict should be guilty.

Under this indictment you may find one of the defendants guilty and the other not guilty, or you may find them both guilty or both not guilty, as the evidence considered in connection with these instructions seems to you to warrant.

The jury disagreed.