STATE OF DELAWARE, Plaintiff, v. CLARENCE W. PRITCHETT, JR., Defendant.

(*September* 13, 1961.)

LYNCH, J., sitting.

*Thomas Herlihy, III,* Deputy Attorney-General, for the State of Delaware.

*Raymond L. Becker* for Defendant.

Superior Court for New Castle County, No. 877, Civil Action, 1960.

LYNCH, Judge:

Defendant was arrested on April 27, 1960 for allegedly operating a motor vehicle while under the influence of intoxicating liquor, in violation of 21 *Del. C.* § 4111(a) as amended. That statute provides:

"(a) Whoever operates a motor vehicle while under the influence of intoxicating liquor or of any drug shall be fined, * * *, or imprisoned * * *."

Defendant was first tried and found guilty in the Court of Common Pleas in and for New Castle County. Defendant appealed this conviction to this Court. The State and the defendant have agreed that the legal problem involved should be disposed of prior to trial in the form of a motion to dismiss the information. A stipulation of facts was entered into and filed with the Court. From the stipulation the following facts appear.

Defendant was arrested on April 27, 1960, at approximately 2:00 A.M. The investigating officer, State Trooper Ralph Ruth, Jr., was summoned by Howard Seck of 1009 North Clayton Street, Wilmington, Delaware, to the inter-

section of Memorial Drive and Bizarre Avenue, Garfield Park, New Castle County. Upon arrival there Trooper Ruth found a car standing in the middle of the intersection of Memorial Drive and Bizarre Avenue, Garfield Park, which highways are public highways. The car's engine was running and the lights were on. The defendant was slumped over the front seat. His hips and buttocks were seated behind the driver's side of the front seat of the car; his head and the rest of defendant's body were slumped horizontally on the front seat and generally to the right of the driver's side. No one else was in the car. His feet were on the floor of the car near the controls, but not on the controls.

Trooper Ruth attempted to arouse the defendant and for a time without success. The defendant was finally aroused by the Trooper's continued hollering at him. The defendant hollered back at one time and then fell back in an unconscious condition, but he was finally aroused sufficiently so that he got up. When asked to step out of the car he did so after first turning off the engine. It was evident to Trooper Ruth at this time that defendant had been drinking because of his unsteady condition. The defendant admitted drinking three beers but at no time did defendant admit driving the car on April 27, 1960.

Counsel for defendant argues that defendant may not be convicted of operating a motor vehicle while under the influence of intoxicating liquor under the stipulated facts, stressing that these facts do not show defendant was "operating a motor vehicle while under the influence of intoxicating liquor." It is argued that two elements are involved in 21 *Del. C.* § 4111(a) as amended, and in order for the State to prove defendant guilty of violating the statute, the State's evidence must cover both elements. These are:

1.   That he be operating a vehicle upon a highway.

2. That he be under the influence of intoxicating liquor. It is admitted that the facts in the case at bar satisfy the element that defendant may have been under the influence of intoxicating liquor, but defendant's counsel strenuously contends that there is no evidence that defendant was operating or had operated his automobile while intoxicated and so there are no facts to support the first element of the crime; it is argued that "operating" means putting into or continuing in activity. *Webster's Unabridged International Dictionary*.

Defendant's counsel put much reliance on the holding of our Supreme Court in *Rickards v. State*, 6 *Terry* 573, 77 *A.* 2d 199, where at page 203 it was decided, in effect, that our statute, Title 21, *Del. C.*, § 701, authorizes police officers to arrest only upon view for violations of the motor vehicle code and not upon the belief that a crime had been committed. It is clear, says the defendant, from the stipulation of facts in the instant case, that the police officer never saw defendant "operating" a motor vehicle and so defendant was arrested illegally, since the officer did not view the violation. Defendant, through counsel, insists that direct or positive evidence, rather than circumstantial evidence, is necessary to convict a defendant of operating a motor vehicle while under the influence of intoxicating liquor.

The State argues, on the other hand, the case at bar can be distinguished from *Rickards v. State*, since in that case, in which the defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor, the State Police Officer arrived on the scene about half an hour after an accident, and found defendant's car parked on the side of the highway, and the defendant asleep in an adjacent woods about 50 feet away.

The case *sub judice* says the State is stronger in that the defendant was found in the car with the engine running and the lights on; that the defendant was the only person in the car, and he was in the driver's seat on the front seat with his

feet in the proximity of the operating mechanisms of the car. The car itself, the State notes, was standing in a public highway and not parked on the side of the road, as appears in *Rickards v. State.*

It is first desirable to determine the precise and relevant holding of *Rickards v. State* to determine if that case is applicable and determinative. Counsel for that defendant in that case objected to the testimony of the arresting officers because it was claimed their evidence was illegally obtained and was violative of the constitutional guarantees against illegal search and seizure and against self-incrimination, in that there had not been a legal arrest.

The Supreme Court held that Rickards had been illegally arrested, 6 *Terry* at page 582, 77 *A.* 2d at page 203, because the police officers had not viewed Rickards operating the car, and so the allegedly illegally obtained evidence should be excluded.

It is to be observed that when the arresting officers found Rickards he was not in the car but was asleep some 50 feet away from it. 6 *Terry* at page 576, 77 A. 2d at page 201. The Supreme Court there noted:

"The only testimony offered by the state of his intoxicated condition is that of the police officers who testified as to what the defendant did while in custody, his general condition and the strong odor of alcohol on his breath."

In a footnote, 6 *Terry* 576, 77 *A.* 2d 201, the Supreme Court pointed out—

"* * * owner of the truck had no sense of smell and, consequently, could not testify as to an odor of alcohol about the defendant."

Seemingly, the Supreme Court considered this inability to smell on the part of the owner of the truck to be of significance and so shall I.

The facts of the case, 6 *Terry* at page 576, 77 *A.* 2d at page 201, show—

"* * * that the defendant, driving his car on a highway of this state, drove it into the rear of a truck then parked on the side of the road. He then drove his car to a position in front of the truck and on the side of the highway, spoke to the owner of the truck, went into an adjacent woods for a distance of about fifty feet [and laid down] and went to sleep. * * *. The only testimony offered by the State of his intoxicated condition is that of the police officers * * * as to what defendant did while in custody, his general condition and the strong odor of alcohol on his breath."

In the case at bar the following facts were obvious to the investigating officer as he arrived at the intersection of Memorial Drive and Bizarre Avenue at 2:00 A.M. on April 27, 1960:

(1) The defendant's car was stopped in the middle of a public highway.

(2) The engine was running.

(3) The lights were on (it was nighttime).

(4) The defendant was seated with his buttocks and legs generally in the driver's seat and the rest of his body slumped over to the right in the direction of the passenger's front seat, but with his feet near the car controls but not on them.

(5) No one else was in the car.

(6) The officer tried to arouse the defendant by hollering at him; the defendant awoke and hollered back, but then he fell back into an unconscious position. The officer took the defendant back to the police station where subsequent tests taken after the arrest confirmed the officer's suspicion that the defendant was under the influence of intoxicating liquor.

In view of defendant's obvious intoxicated condition, it was entirely appropriate and wholly legal for Trooper Ruth to have taken defendant into custody since defendant was violating 11 *Del. C.* § 611, which in part provides:

"§ 611(a). Whoever is found drunk . . . on the street, highway, or other public place, may be arrested by any officer, with or without warrant, * * *."

To this extent *Rickards v. State* is distinguishable,—particularly since that case was decided on the single issue of whether or not Rickards had been legally arrested.

The Court here is asked to determine if a person charged with operating a motor vehicle while under the influence of intoxicating liquor can be convicted by circumstantial evidence,—and if so, are the stipulated facts sufficient for the Court to find that defendant was "operating" his car and that defendant was thus guilty of the crime charged? *Rickards v. State* can, therefore, be ignored, since it was not concerned with any problem which is presented by the case under consideration.

Defendant's argument, in the main, is that defendant cannot be convicted of the charge made here by circumstantial evidence. That argument lacks substance and must be rejected. It has long been established in this State that any conviction of any criminal charge may be sustained on circumstantial evidence. *State v. Loftland* (Larceny) 2 *Del. Cas.* 133, 137 (1800); *State v. Crocker et al.,* (Larceny) 2 *Del. Cas.* 150, 154 (1801); *State v. Goldsborough,* (Murder) 1 *Houst. Cr. Cas.* 302, 314-315 (1869); *State v. Taylor,* (Murder) 1 *Houst. Cr. Cas.* 436, 453 (1874); *State v. Blackburn,* (Murder) 7 *Penn.* 479, 487, 75 *A.* 536 (1892); *State v. Evans,* (Putting poison in well) 1 *Marv.* 477, 483-484, 41 *A.* 136 (1893); *State v. Dinneen,* (Arson) 7 *Penn.* 505, 508, 76 *A.* 623 (1896); *State v. Fisher,* (Breaking and entering with intent to commit rape) 1 *Penn.* 303, 316, 41 *A.* 208

(1898); *State v. Brinte and Jiner,* (Murder) 4 *Penn.* 551, 561, 564, 566, 58 *A.* 258 (1904); *State v. Samuels,* (Murder) 6 *Penn.* 36, 39, 67 *A.* 164 (1904); *State v. Tyre,* (Violation of election laws) 6 *Penn.* 343, 356-357, 67 *A.* 199 (1907); *State v. McCallister,* (Malicious Mischief) 7 *Penn.* 301, 307, 76 *A.* 226 (1909); *State v. Roberts,* (Murder) 2 *Boyce* 140, 151, 152, 78 *A.* 305 (1910); *State v. Rubin,* (Larceny) 1 *Boyce* 596, 600, 77 *A.* 752 (1910); *State v. Stiegler,* (Conspiracy to cheat) 7 *Boyce* 236, 246, 105 *A.* 667 (1917); *State v. Robinson et al.,* (Larceny) 7 *Boyce* 106, 103 *A.* 657 (1918); *State v. Ghadiali,* (Practicing medicine without a license) 6 *W. W. Harr.* 308, 175 *A.* 315 (1933); *State v. Walters,* (Bastardy Proceedings) 8 *Terry* 155, 89 *A.* 2d 135 (1952); *Holland v. State,* (Selling liquor and beer without a license) 9 *Terry* 559, 107 *A.* 2d 920 (Good case by the Supreme Court) (1954); *State v. Biter* (Conspiracy to defraud) 10 *Terry* 503, 512, 119 *A.* 2d 894 (1955) and *State v. Buckingham,* (Arson) 11 *Terry* 469, 473, 134 *A.* 2d 568, 569 (1957) (Good case, defendant gave explanation of what had transpired.)

There is nothing in the statute, nor are there any reported decisions in our Courts indicating there is any limitation on the use of circumstantial evidence in cases involving charges of operating a motor vehicle while under the influence of intoxicating liquor but that does not give me pause. If the circumstantial evidence adduced by the State meets the tests laid down in *State v. Goldsborough,* 1 *Houst. Cr. Cas.* 302, 315; *Holland v. State, supra; State v. Biter, supra* and *State v. Buckingham, supra,* there is no sound reason why circumstantial evidence cannot be used in the proof of such a charge. Other states have upheld convictions based on the use of circumstantial evidence. *Commonwealth v. Wood,* 261 *Mass.* 458, 158 *N. E.* 834 (1927); *State v. Hazen,* 176 *Kan.* 594, 272 *P.* 2d 1117 (1954); and *State v. Damoorgian,* 52 *N. J. Super.* 108, 146 *A.* 2d 550 (1958). A consideration of these cases will show their logic and pertinency of the opinions in

those cases to the case at bar. In *Commonwealth v. Wood, supra,* it appeared that following a crash of colliding automobiles—

"* * * defendant was immediately thereafter found sitting in the front seat of an automobile 'in a slumped down position behind the wheel'; that the automobile, in which defendant was alone, was not in motion and its motor was stopped; * * * and that the defendant was drunk * * *."

The Supreme Judicial Court of Massachusetts, in sustaining the conviction (per Chief Justice Rugg), said, 158 *N. E.* at page 834:

"This presents a typical case for the application of the rule of circumstantial evidence. 'The true rule of law respecting the probative character of circumstantial evidence is well settled. It is that the circumstances must be such as to produce a moral certainty of guilt, and to exclude any other reasonable hypothesis; "that the circumstances taken together should be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty, that the accused, and no one else, committed the offense charged." ' *Commonwealth v. Russ,* 232 *Mass.* 58, 68, 122 *N. E.* 176, 180. The positions of the automobile and of the defendant and all the circumstances amply justified a finding beyond a reasonable doubt that the defendant must have operated the automobile in violation of the statute."

Then in *State v. Hazen, supra,* the facts showed that defendant's car was found at 9:00 P.M. on May 29, 1953, standing on a highway, headed east, in the center of the eastbound traffic lane. It was dark. The motor was shut off. Defendant was sitting in a slumped position in the driver's seat, in a dazed condition. Defendant was intoxicated.

In sustaining the conviction Kansas Supreme Court said (272 *P.* 2d at page 1118):

"* * *. For all the record shows, the jury reached the obvious conclusion that defendant drove the vehicle to the place where it was found, and that at the time was under the influence of intoxicating liquor, in the theory that a sober person would not park his car in the middle of the highway, with the lights off, after dark. Entirely aside from the confusing evidence as to whether defendant 'drove' his car after the officers arrived at the scene, the circumstantial evidence above related was sufficient to withstand the demurrer and to support the verdict of guilty."

In *State v. Damoorgian*, 53 *N. J. Super*. 108, 146 *A*. 2d 550 (1958) defendant was found at 11:05 P.M. in his car, parked on the grass section of the shoulder of the New Jersey Turnpike, sitting in the driver's seat with his head lying against the window of the door on the driver's side. This door was locked. The engine was running and the radio playing. Defendant smelled of alcohol. The State Trooper awakened defendant and got him out of the car; defendant had difficulty in holding balance. A toll ticket marked 10:04 P.M. was found in defendant's possession. Defendant did not testify when charged and tried on a charge of "operating a vehicle while under the influence of liquor". He was found guilty and appealed. He argued that there was no proof of operation of the automobile by defendant. In upholding the conviction the New Jersey Court noted, 146 *A*. 2d at page 553, "There is no evidence that any one else was with defendant." Referring to the toll ticket, the Court observed—

"* * * in order to arrive [at his home] there from the turnpike he would have to travel northbound from the point where he was parked. It was also shown that the defendant's car had its parking lights on, that when the trooper opened the door of the same the engine was running and that the radio was playing.

"From these undisputed facts the inference is inescapable that the defendant operated the motor vehicle he was found

in on the grass portion of the shoulder of the northbound lane of the New Jersey Turnpike. * * *."

See also *State v. Baumgartner*, 21 *N. J. Super.* 348, 91 *A.* 2d 222 (1952).

These cases, taken in light of the settled principles relating to the use of circumstantial evidence, are a sufficient answer to defendant's contentions made in this case that a person cannot be convicted of operating a motor vehicle under the influence of intoxicating liquor.

The defendant next argues that the evidence does not show defendant was "operating" the car, since under the definition found in *Webster's Unabridged International Dictionary*, that word is defined as meaning putting into or continuing in activity.

The meaning to be given the terms "operating" or "driving", as such terms are used in statutes of the kind under consideration, are considered in a number of treatises. The several meanings the Courts have given to these terms may be found in *Blashfield, Cyc. of Automobile Law*, (Perm Ed.) Vol. 8, § 5393; 61 *C. J. S.*, Motor Vehicles § 628; 5 A. *Am. Jur.*—Automobiles and Highway Traffic, §§ 1161 and 1162; and see annotation in 47 *A. L. R.* 2d pp. 568, 570. At page 571, the Annotator properly points out that "a certain distinction between the two terms [driving and operating] is nevertheless recognized". Since our statute uses the term "operating", the cases involving the term "driving" need not be considered.

Analysis of the many cases that may be found in these books and in the Digests leads to the conclusion that, notwithstanding the dictionary meaning defendant relies on, the well considered and reasoned cases sustain the view that a person may be convicted of "operating" a motor vehicle while under the influence of intoxicating liquor without it necessarily being shown that the automobile was actually

in motion or even had the engine going; in short, circumstantial evidence will show that the accused was "operating" the motor vehicle while under the influence of intoxicating liquor. Thus in *State v. Storrs*, 105 *Vt*. 180, 163 *A*. 560, 563, the facts showed a car was stopped on the highway because the ignition apparatus had become wet, so that no current could be transmitted to the spark plugs. Defendant was in an intoxicated condition and was seen "sitting in the driver's seat"; he was seen to "twice [turn] on the switch and caused the self starter to function, without, however, starting the motor". His conviction was upheld.

The Supreme Court of Tennessee in *Bradam v. State*, 191 *Tenn*. 626, 235 *S. W*. 2d 801, 802 (1951), had before it facts showing a truck was stopped because its lights were not functioning. Defendant had been operating it and he had sent for repairs to be made to the lights. The truck was struck in the rear and a death resulted. The defendant was prosecuted for involuntary manslaughter. The Tennessee Supreme Court sustained a conviction which found defendant guilty. The Court ruled that it was not necessary to constitute "operation" of the vehicle, within the meaning of the statute that the car be "actually in motion [or] * * * that the engine be running." In *Commonwealth v. Henry*, 229 *Mass*. 19, 118 *N. E*. 224, 225, *L. R. A*. 1918B, 827, the Supreme Judicial Court of Massachusetts said:

"The word 'operated' is not, as the defendant contends, limited to a state of motion produced by the mechanism of the car, but includes at least ordinary stops upon the highway, and such stops are to be regarded as fairly incidental to its operation. It does not appear from the agreed facts how long the automobile had been left upon the street or for what purpose the defendant went into the building. Certainly there is nothing to show that he had left it for an unreasonable time, or that the stop was not for a proper purpose; nor is there any evidence that the car had been abandoned, although

we do not mean to intimate that if it had been the statute would not have been violated. As was said in the recent case of *Stroud v. Water Com'rs of City of Hartford*, 90 *Conn.* 412, 97 *A.* 336, in construing a similar statute:

" 'The word "operation" * * * must include such stops as motor vehicles ordinarily make in the course of their operation. * * *. In this case the plaintiff's car was so much in the ordinary course of operation on the highway at the time of the injury as if it had been used for shopping, calling, or delivering merchandise.'

"It was said by this court in *Smethurst v. Barton Square Ind. Cong. Church*, 148 *Mass.* 261, 266, 19 *N. E.* 387, 389 (2 *L. R. A.* 695, 12 *Am. St. Rep.* 550), that:

" 'In order to be a traveler it is not necessary that one should be constantly moving, if he is a pedestrian, or that the vehicle he drives, or that in which he is conveying goods, if he is using one, shall be continuously in motion. It would certainly be impossible to use the highways conveniently for the ordinary purposes of business or social life with teams or lighter carriages if occasional stops were not permitted to enable those using them to load and unload teams, to receive and deliver goods, to enter shops and stores, and to make brief calls of business or even of a social character.'

"The statute must be read with reference to its manifest intent and spirit and cannot be limited to the literal meaning of a single word. It must be construed as a whole and interpreted according to the sense in which the words are employed, regard being had to the plain intention of Legislature. So considered, we cannot doubt that the statute is broad enough to include automobiles at rest, as well as in motion, upon the highways. * * *."

In *State v. Webb*, 202 *Iowa* 633, 210 *N. W.* 751, 49 *A. L. R.* 1389 (1926) it appeared that Webb got into driver's seat, stepped on starter and car was idling; the car not in gear or

in motion. He was convicted and on appeal contended that he was not "operating" his automobile and so could not be convicted of "operating" the car. The Iowa Court said, 210 N.W. 751, 752:

"The defendant in the case at bar testified that he had started the engine and it was running. This is one of the necessary elements in the operating of a car. In other words, he could not have put his car in motion without having first started the engine, and the starting of the engine therefore is the first step in the operation of a car. We are disposed to hold in line with the *Overbay* case (*State v. Overbay*, 201 *Iowa* 758, 206 *N. W.* 634) that the defendant was 'operating' his car, within the meaning of the statute. The real danger that this statute seeks to protect against is from the possible results from a drunken condition of a driver. The testimony in the case shows that they came to this place in an automobile and had seated themselves in the car after they came down from upstairs for the purpose of going somewhere else, and the starting of the car was the initial step in carrying out the operation of the car. * * *."

In *State v. Webb*, 78 *Ariz.* 8, 274 *P.* 2d 338 (1954) the statute uses the phraseology—"actual physical control of motor vehicle" while under influence of intoxicating liquor. Defendant's car was standing near street intersections, with lights on, motor running and defendant intoxicated with both hands and his head resting on the steering wheel. The Arizona Court in sustaining the conviction said, 274 *P.* 2d at page 340:

"* * *. While at the precise moment defendant was apprehended he may have been exercising no conscious volition with regard to the vehicle, still there is a legitimate inference to be drawn that defendant had of his own choice placed himself behind the wheel thereof, and had either started the motor or permitted it to run. * * *."

In *State v. Ray*, 133 *A.* 486, 488, 4 *N. J. Misc.* 493 (1926) Ray got into his car, stepped on starter at the time he was arrested. It was shown he was intoxicated. The Supreme Court of New Jersey upheld the conviction, saying:

"* * *. This, we think, was an act which is included within the term 'operation' which is the word used in the Motor Vehicle Act * * *."

In *People v. Domagala*, 123 *Misc.* 757, 206 *N. Y. S.* 288 (1924), the defendant had started his motor but his car stalled; it never moved because front wheels were against the curb. The Court said in upholding the conviction:

"* * *, the respondent began to violate the law the instant he began to manipulate the machinery of the motor for the purpose of putting the automobile into motion. * * *."
In *State v. Fox*, 248 *Iowa* 1394, 85 *N. W.* 2d 608, 611 (1957), an officer found defendant, in an intoxicated condition, in the driver's seat with one foot pressing on the brake and with the engine running and the car in drive gear. The car was not in motion.

The Iowa Supreme Court said:

"This was sufficient to constitute 'operating' the automobile within the meaning of the statute."

It is sufficient said the Supreme Court of Nebraska in *Waite v. State*, 169 *Neb.* 113, 98 *N. W.* 2d 688, 691 (1959), to convict defendant of operating a motor vehicle while under influence of intoxicating liquor if he was actually physically handling "the controls of the vehicle * * * while under the influence of intoxicating liquor." In *Commonwealth v. Uski*, 263 *Mass.* 22, 160 *N. E.* 305 (1928) a police officer saw defendant get into car, take keys out of pocket, turned on lights, started motor "that the car moved four or five feet" whereupon defendant was arrested. Defendant was drunk.

The Massachusetts Court said, 160 *N. E.* at page 306:

"\* \* \*. A person operates a motor vehicle within the meaning [of the statute] when in the vehicle, he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of that vehicle. \* \* \*."

From a consideration of the foregoing cases and the meanings given to the terms "operating" and "operated" by the Courts deciding such cases, it is clear that the circumstantial evidence shown by the stipulation of facts is sufficient to warrant a conviction by defendant of violating 21 *Del. C.* § 4111(a).

In the case at bar, the Trooper found defendant in a position in the driver's seat which would make it impossible for another to get in that seat, and with his legs and feet near the controls; the motor was running, and the car was standing on a public highway with defendant admittedly intoxicated.

There was one act on defendant's part that has significance—when he was finally aroused from his intoxicated condition he had the presence of mind to shut off the motor. That had great meaning; consciously or unconsciously; sober or intoxicated, defendant knew he was in an automobile with the engine running and that he was "operating" that car; he demonstrated it when he turned the ignition key and shut off the motor.

Cases based on 21 *Del. C.* § 4111(a) are not to be tried with an ostrich like attitude—one's head in the sand. Defendant's car didn't reach the position where it was found by some magical process; no figure from outer space dropped it from the sky to Memorial Drive at its intersection with Bizarre Avenue, where it was found by the State Trooper; it had to have been "operated" by someone to get it to the place where the Trooper found it, with defendant in it. The evidence clearly indicated it was practically, if not wholly,

impossible to conceive that any person, other than the defendant, could have gotten into the driver's seat, manipulated the gears and driven it to the spot where it was found, with the defendant sitting as he was in relation to the driver's seat and with his feet situated as they were. See *State v. Damoorgian, supra;* see also *State v. Biter, supra,* where Judge Layton (10 *Terry* at page 514, 119 *A.* 2d at page 901) observed of a speedometer that had been turned back in violation of a statute—

"There is circumstantial evidence from which a jury could have been fully satisfied not only that the circumstances were consistent with Biter's having turned back the speedometer in order to make a sale of the Mercury car, but also inconsistent with any other rational conclusion. While the testimony on this point was admittedly wholly circumstantial, yet, the conspiracy to defraud could not have been accomplished unless the Mercury automobile in question had a very low mileage on the face of the speedometer. When it left Jensby's possession, the speedometer indicated 800 miles. While in the actual or constructive possession of Biter's and before delivery to Villa, the reading was changed to 8 miles. As above observed, the speedometer could not have jumped back of its own accord. It had to be changed by a person skilled as a mechanic and acting under the direction of one interested in such a result. No mere employee of Biter's or of the repair shop which repaired the damaged fender would have had any possible interest in altering the speedometer on his own initiative. The inescapable inference is that it was done at the direction of an official of Biter's. * * *."

And see *Holland v. State, supra,* where the Chief Justice, 9 *Terry* 561, 107 *A.* 2d 921, commented on remote possibilities in the chain of circumstantial evidence:

"* * *. The possibility is so remote as to justify any jury (or judge, as here) in holding it an unreasonable supposition,

in the absence of evidence reasonably justifying such a conclusion."

It is always open to a defendant to explain away the State's testimony, *State v. Buckingham, supra,* and in the absence of such an explanation the facts established by the circumstantial evidence presented by the State, see *Holland v. State,* 9 *Terry* at page 561, 107 *A.* 2d at page 921 and *State v. Baumgartner,* 91 *A.* 2d at page 223, may be sufficient to warrant the conviction, based on the circumstantial evidence.

Here the facts which would warrant a conviction, even though established by circumstantial evidence, would, in my opinion, be sufficient to prove the charges made in and by the Information, and so for the reasons stated defendant's motion to dismiss the Information cannot be sustained. An order to such effect may be presented.