THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MIGUEL A. RAMOS GARCÍA, Defendant and Appellant.

No. CR-64-418.          Decided May 19, 1965.

*Rafael S. Fuentes Rivera* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Manuel Tirado Viera, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

Mr. Justice Dávila delivered the opinion of the Court.

While two policemen were patrolling the Caparra Terrace section at about eleven p.m. they passed in front of Block L-J of that development and observed appellant who was inside his automobile sounding the horn frequently. The peace officers left the car in which they were traveling and upon making the corresponding investigation, they found appellant "with his car's motor running, bent over the steering wheel as if he had been asleep over the wheel."[1] In noticing that his physical appearance was not normal and that he smelled strongly of liquor they proceeded to arrest him and took him to the Municipal Hospital of Santurce where a blood smear was taken. The result of the blood test was 0.23 percent of alcohol per weight.

---

[1] Testimony given by officer Roberto García Méndez. (Tr. Ev. p. 7.)

He was accused of violating § 5-801 of the Vehicle and Traffic Law.[2] He was charged with "driving or operating [an] automobile on a public road . . . under the influence of intoxicating liquor." The court decided the conflict in the evidence and found appellant guilty. He was sentenced to 10 days in jail. His driver's license was suspended for the term of one year.

Appellant attacks the information filed. He contends that "it is always held to be a fatal variance to charge disjunctively . . . if the disjunctive in the averment of the facts on which the information is based creates doubt as to which of the two alternatives is sought to be followed."

Defendant did not raise this question prior to the trial. Without dispute, he had the right to know of which of the two modalities "driving" or "operating" he was being accused. But he had to raise this question as a demurrer to the information prior to the trial. Section 153 of the Code of Criminal Procedure,[3] then in force, provided that "[t]he defendant may demur to the information, when it appears upon the face thereof . . ." that "more than one public offense is charged in any count of the information or complaint." In *People* v. *Adorno*, 81 P.R.R. 504, 520 (1959) ratifying previous decisions, we decided that if this question is not timely raised as a demurrer to the information, it cannot be raised on appeal. Moreover in *People* v. *Rivera*, 87 P.R.R. 310 (1963), we stated:

"The rule seems to be that where a statute denounces as criminal two or more separate and distinct acts or transactions, enumerated therein in the disjunctive—namely, establishing an alternative by the use of the disjunctive expression *or*, whereby one is bound to choose one of them—an information may include

---

[2] The provision allegedly violated provides:

"It shall be unlawful for any person who is under the influence of intoxicating liquor to drive or operate any motor vehicle." 9 L.P.R.A. § 1041(a) (1963 ed.).

[3] See Rule 64 of the Rules of Criminal Procedure of 1963.

all of them conjunctively and the defendant found guilty of either one."

Appellant contends that it was an error to conclude that he had violated the law. His contention is to the effect that inasmuch as the automobile was parked, as it was established by the prosecution evidence, he was not committing the offense charged. He invokes *People* v. *Rivera, supra.*

In *Rivera* the information charged "driving" a vehicle under the influence of intoxicating liquor. It was concluded that the evidence did not show that defendant was "driving" the vehicle.

In the case at bar appellant was charged with "driving or operating" a motor vehicle under the influence of intoxicating liquor. Under this last modality of the offense, it is not necessary to prove that the automobile in which the person is found was in motion but it is sufficient, as in the present case, to show that the person was inside the automobile, with the motor running and under his immediate control. It is generally accepted that when statutes as the one allegedly violated prescribe, in addition to the activity of driving, another which could properly be "operating", the latter includes situations like the ones presented in the instant case.

Evidently, the lawmaker had some purpose in using two different concepts "drive or operate." Everyone knows what driving a motor vehicle means. So when the lawmaker added the term "operate" it was to include another different activity. In *Rivera* we made reference to the legislative history of the statute in question. We stated that: "[t]he legislative history of § 5-801 shows that the word 'drive' was first employed as the only punishable act; subsequently it was thought of an amendment by including the words 'or has physically under his control a motor vehicle,' and lastly, it was decided to substitute those words by 'to operate': 13-III Journal of Proceedings 1409, and 13-V *op. cit.* 2276. This

being so, the term 'drive' and the term 'operate,' included as such in the last wording of § 5-801, mean two distinct offenses in the disjunctive. . . ."

We stated, moreover, in *Rivera*, citing from 3 Wharton, Criminal Law And Procedure, §§ 993–994 (1957 ed.) :

"Although statutes which prescribe the offense of 'driving' while intoxicated and those which prescribe the offense of 'operating' a motor vehicle while intoxicated exist for the same purpose, that is, protecting the users of the highways against the hazards of vehicles controlled by persons under the influence of intoxicating liquors, a distinction between the terms has nevertheless been recognized by some courts. 'Operating' has been construed to include acts not within the meaning of the term 'driving.' Merely starting the engine of an automobile has been held to constitute an operation of such automobile within the meaning of a statute prohibiting the operation of a motor vehicle by a person under the influence of intoxicants.

"Indeed, some courts have held that any manipulation of the mechanical or electrical agencies of a motor vehicle, which manipulation, alone or in sequence, would set in motion the motive power of the vehicle, is an 'operation of the vehicle' within the meaning of the statute prohibiting the operation of a motor vehicle by an intoxicated person, at least, if there is an intention to move the car.

"The slightest operation of the machine by an intoxicated person constitutes a violation of the statute."

See, also: *State* v. *Peirson*, 204 A.2d 838 (Conn. 1964) ; *State* v. *Pritchett*, 173 A.2d 886 (Del. 1961) ; *Flournoy* v. *State*, 128 S.E.2d 528 (Ga. 1962) ; *State* v. *Webb*, 210 N.W. 751 (Iowa 1926) ; *State* v. *Sweeney*, 187 A.2d 39, *affirmed* in 192 A.2d 573 (N.J. 1963) ; *Bradam* v. *State*, 235 S.W.2d 801 (Tenn. 1950) ; *Gallagher* v. *Commonwealth*, 139 S.E.2d 37 (Va. 1964) ; 8 Blash Auto, § 5393 (1950 ed.) ; Annotation, *Driving While Drunk*, 47 A.L.R.2d 570 (1956).

The judgment appealed from will be affirmed.