The defendant was charged with having operated his automobile on a public highway in Manchester while under the influence of intoxicating liquor, in violation of § 14-227 of the General Statutes. Upon a trial to the court he was found guilty. He has appealed from this judgment and has assigned error in two rulings upon the admission of evidence and in the conclusion of the court that the defendant was guilty of the crime charged beyond a reasonable doubt. A further assignment of error in the court's denial of a motion to dismiss after the state had rested its case was not pursued in argument, and, quite properly, was abandoned. See Maltbie, Conn. App. Proc. § 212; State v. Murphy,124 Conn. 554, 567.
The arresting officer, Trooper Robert Coffey, who examined the defendant at the police barracks, was permitted to testify, against the defendant's objection, that while the defendant was in custody an offer was made to him to submit specimens of his urine for analysis of alcoholic content and that the offer was rejected. In the officer's presence, the defendant was later examined by Dr. George Crawley, who testified at length as to his professional observations of the defendant's condition and, in the course of a detailed statement, was allowed to testify that he had asked the defendant to permit him to take a sample of his blood for a blood test and the defendant refused. To this the defendant also objected.
In neither case did defense counsel or the prosecuting attorney correctly state the grounds upon which the objection was made or upon which the *Page 323 
evidence was claimed, as required by our practice. Practice Book § 155; see Casalo v. Claro, 147 Conn. 625,629; State v. Whiteside, 148 Conn. 208, 217. It appears, however, from the brief argument on the question of admissibility, that both the trial court and counsel shared the understanding that the evidence was offered generally as material and relevant to the issue and as evidence which, together with all the other evidence produced, would lead to a conclusion of guilt, and that the objection was based on the grounds that the testimony violated the defendant's privilege against self-crimination and infringed his right to resist inculpation by remaining silent while in custody, and that, on the whole, the evidence was immaterial, incompetent and irrelevant.
By the overwhelming weight of authority, the results of a scientific test are admissible as competent and relevant evidence upon the issue of intoxication where the method used has, by statute or through proof, been established as reliable, the test has been properly administered, and the results have been correctly interpreted. It has been generally held that the results of such tests may be received where the accused submitted voluntarily to the tests, and there is no substantial difference of opinion that such evidence is not rendered inadmissible because, when the sample of body fluid was taken, the accused was unconscious or unable to exercise his volition. It should also be noticed that the decisions are almost uniform in agreement that such evidence does not amount to testimonial compulsion violative of the constitutional privilege against self-crimination and does not curtail the guarantee of due process or against unreasonable search and seizure. Where duress or force had been used in gaining incriminatory evidence from the accused, such evidence has generally been excluded *Page 324 
under a rule of evidence or because it so grossly did violence to the sanctity of the person as to be abhorrent to our sense of justice and thus violative of due process under the fourteenth amendment. See 8 Wigmore, Evidence (3d Ed.) §§ 2251, 2252, 2260, 2263, 2265 1959 Sup. § 2265, and collected cases; notes, 159 A.L.R. 209, 210; 127 A.L.R. 1513.
The precise question under review is whether in a criminal prosecution such as this it is permissible to show in evidence that, while the defendant was in custody, he refused to submit to an examination of body fluids for the purpose of determining alcoholic content. This question has not been decided by our Supreme Court of Errors; and in those jurisdictions where the appellate courts have ruled on it, there is found to be a divergence of opinion.
Thus in Gardner v. Commonwealth, 195 Va. 945, it was held that testimony of the defendant's refusal to submit to a blood test while he was under arrest for operating under the influence of intoxicating liquor was admissible as trustworthy and pertinent evidence tending to show the circumstances surrounding the arrest, such as the conduct of the accused, his acts, his physical and mental condition, and his declarations and admissions. The claim that such evidence violated the constitutional privilege of the accused against self-crimination was rejected.
The case of State v. Bock, 80 Idaho 296, involved a state statute which provided that an operator of a motor vehicle was deemed to have consented to a test of breath, blood, urine or saliva to determine alcoholic content, provided the test was administered according to certain specified conditions. Testimony of defendant's refusal to submit to a blood test was admitted. It was held that the constitutional provision against self-crimination was *Page 325 
not involved and the evidence was properly received. "Like any other act or statement voluntarily made by him, it was competent for the jury to consider and weigh, with the other evidence, and to draw from it whatever inference as to guilt or innocence may be justified thereby." Id., 309.
In State v. Smith, 230 S.C. 164, error was assigned in admitting testimony of the defendant's refusal to submit to a chemical test for the purpose of determining the amount of alcohol in his blood and in permitting the prosecutor to comment to the jury on such refusal. It was held that neither the testimony nor the comment violated the constitutional right against self-crimination, since there was no compulsory "disclosure by utterance."
No mention whatever of any constitutional issue is made in People v. McGinnis, 123 Cal.App.2d Sup. 945. It was there held that, in a prosecution for driving while intoxicated, evidence that the defendant had declined to comply with the arresting officer's request that he submit himself to an intoximeter test was properly admitted, even though the defendant at all times denied his guilt. The court considered the evidence of the same nature as that showing some action on the part of the accused revealing a consciousness of guilt, "for it was not what the defendant said that was significant, nor his failure to say anything; but what he refused to do." Id., 946.
Also in the earlier case of State v. Nutt, 78 Ohio App. 336, it was held that testimony of a police officer and a physician that the defendant had refused to undergo a urinalysis test was admissible and that the constitutional prohibition related only to "disclosure by utterance."
In State v. Benson, 230 Iowa 1168, no error was found in the court's permitting a deputy sheriff *Page 326 
to testify that the defendant declined to submit to a blood test for alcohol. Although Iowa had no constitutional provision against testimonial compulsion, identical safeguards were established by statute, and the court held that the statute was not violated. The value of this decision in relation to Connecticut law appears to be doubtful because of the reason on which it is, in large part, based, namely, that refusal to submit to the proffered test was equivalent to an act of silence in the face of an accusation of crime. It was further held that the refusal was a circumstance relating to the conduct of the defendant and was analagous to a refusal to testify and that this was proper not only for consideration by the jury but also for comment by the county attorney.
The earliest reported case on the subject is State
v. Gatton, 60 Ohio App. 192. Evidence was admitted on trial to a jury that, after the arrest and confinement of the defendant in jail, a request was made of him by a deputy sheriff that he submit to having either a blood test or a urinalysis made to determine the amount of alcohol in his system and that this he refused to do. In argument, the prosecutor urged that such refusal be considered by the jury as an inference of guilt. On appeal, it was found that there was no error either in the admission of the evidence or the comment by the prosecutor; that there was no violation of the constitutional rights of the defendant; and that the inhibition against self-crimination related only to "disclosure by utterance" (citing Greenleaf, Evidence [16th Ed.] § 469e).
Opposed to the above authorities, holding admissible such evidence as is the subject of the two assignments of error in the case before us, are the following cases, which hold such evidence to be inadmissible. *Page 327 
In People v. Knutson, 17 Ill. App.2d 251, error was found in the admission of evidence that the defendant, arrested on charges of drunken driving, was asked to take an intoximeter test, took it partly, and then refused to take it or complete it. The court said (p. 256): "Such evidence did not tend to prove any material issue in the case and could only have tended to prejudice the jury. This evidence could have prejudiced the jury by leaving the impression that the defendant was intoxicated, otherwise he would have consented to take and complete the test or that he was so under the influence of liquor that he was unable to complete the test."
In City of Barron v. Covey, 271 Wis. 10, there was involved a statute which authorized admission in evidence of the results of chemical tests for alcohol taken within two hours of arrest. No error was found in the exclusion of testimony that the defendant had refused to take the test, the court holding that the statute made such admission or exclusion discretionary with the trial court and further stating that no constitutional question of self-crimination was involved.
Sometimes regarded as a leading case for the proposition that the fact of the defendant's refusal to submit to a test for the purpose of ascertaining the percentage of alcoholic content in his blood cannot be used in evidence against him is State v.Severson, 75 N.W.2d 316 (N.D. 1956). In that case, however, such tests were made admissible by statute, which also provided that "no defendant shall be required to submit to any chemical test without his consent"; N.D. Rev. Code § 39-0801 (Sup. 1953); and the court, basing its decision solely on the claim of statutory privilege, held that such evidence was contrary to the statute. In commenting on State v.Gatton, supra, and State v. Nutt, supra, the court said (p. 318): "If as is intimated by the Ohio cases, *Page 328 
the competency of evidence of a refusal to take a test is dependent upon the absence of a right to refuse, these decisions are authority for the position we have taken here."
The defendant contends that he had a constitutional right to refuse to submit to the proffered tests and that the fact that he refused to do so cannot be laid in evidence against him. The state concedes that the defendant could not be compelled to take either of such tests but asserts that his refusal could be shown as a circumstance attending the arrest and as a verbal act, under the decisions in such cases as State v. Tryon, 145 Conn. 304, 308, andState v. Tolisano, 136 Conn. 210, 214. We are not called upon to pass on any constitutional question, inasmuch as the defendant was not forced to submit to any violence or duress contrary to due process, and he was not "compelled to give evidence against himself," for he voluntarily took the witness stand and testified in his own behalf. Conn. Const. art. I § 9.
The defendant further contends that such evidence was not admissible because it amounted to an accusation while he was in custody and he had the right under the circumstances to do nothing and to say nothing. It is the settled law of this state that in the face of an accusatory statement a person under arrest may remain silent. "Statements made by an accused not by way of confession, are admitted in proof of the independent facts involved in the statements, when such facts are relevant and material to the inquiry, that is, when they lead to inference of guilt. And statements made in his hearing, which are relevant and material, to which he makes no reply, may be given in evidence as indicative of conduct on his part, when the circumstances show that he heard, understood and comprehended the statement, and the facts are known to *Page 329 
him and he had the opportunity to speak and the circumstances naturally called for a reply from him.Commonwealth v. Kenney, 53 Mass. (12 Met.) 235, 237. But when the accused is in custody, our law accords him the right to reply to question or statement, or to remain silent. His silence under such circumstances cannot be laid in evidence against him. Commonwealth v. McDermott, 123 Mass. 440,441; 2 Wharton's Crim. Ev. (10th Ed.) Sec. 679."State v. Ferrone, 97 Conn. 258, 265; see State v.Yochelman, 107 Conn. 148, 151; and State v. Bates,140 Conn. 326, 329.
Among other grounds rendering such statements inadmissible, it is said that "it is the common knowledge and belief of men in general that silence while under arrest is most conducive to the welfare of an accused whether he is guilty or innocent; that is to say, that anything he may say not only may, but will, be used against him, and that such restraint upon an accused destroys the basis for an inference of acquiescence by silence or failure to controvert." 2 Wharton, Criminal Evidence (12th Ed.) p. 166; see State v. Bates, supra.
The state argues that the above rule does not apply because the defendant did not remain silent but expressed his refusal orally and that this statement can be used against him. We are of the opinion that a mere refusal, unaccompanied by words or acts which might be regarded in the nature of admissions by conduct, is tantamount to silence and is not within the rule stated in State v.Tryon, supra. In that case, the defendant, when invited to take a breath test for alcohol, did not simply refuse; her utterance was such as could be considered so irrational as to be indicative of a state of mind from which could be inferred a condition of intoxication. *Page 330 
In this state, there is no legislative sanction for the ascertainment of degrees of intoxication through scientific tests nor are there any legal presumptions as to the results obtained when such tests have been properly administered. The admissibility of the results of such tests depends on the application of the rules of evidence; and the failure to administer or the refusal to take such a test is of no probative value unless there are circumstances present, such as admissions by conduct, that would otherwise be admissible. Implicit in such testimony of refusal is the irremediable suggestion that had the test been given, the results would have been as nearly infallible on the issue of intoxication, proving either guilt or innocence of the accused, as scientific ingenuity could devise, and, thus, from a mere refusal to submit to such test, fairly and reasonably, could be derived an inference of guilt. With this basic assumption we do not agree. The evidence objected to was incompetent for the purpose for which it was offered and should have been excluded.
Since it was admitted, the question for us to determine is whether the evidence was so prejudicial as to constitute harmful error. It is a "fundamental rule of appellate procedure in the review of evidential rulings, whether resulting in admission or exclusion of evidence, that an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him."Casalo v. Claro, 147 Conn. 625, 630, and cases cited. For the reasons hereinafter given in our consideration of the final assignment of error, we hold that the rulings on evidence objected to did not constitute reversible error.
The defendant claims that the court erred in finding him guilty of the crime charged beyond a reasonable doubt. Upon the evidence, the court could reasonably have found that the defendant had consumed *Page 331 
alcoholic beverages, the last drink having been taken approximately one and one-half hours before the arrest; that just prior to the arrest defendant was operating his car erratically; that there was detectable an odor of alcohol on his breath; that he staggered badly, his speech was thick and he displayed other symptoms, such as dulled perception and inco-ordinated behavior, which are commonly associated with a state of intoxication. The court also had the benefit of expert medical testimony, based upon various tests and observations made by the physician who examined the defendant fifty-five minutes after the arrest, and the testimony of the accused himself, in which he admitted consuming vodka but attributed his condition to the effects of the probanthine and aspirin which he claimed to have taken earlier that day. There was no corroboration or support either through medical testimony or by other reliable evidence, that the defendant's condition was caused by something other than alcohol. At most, the purpose of his testimony was to introduce a hypothesis of innocence as bearing on the existence of a reasonable doubt. See State v. DeCoster, 147 Conn. 502, 505;State v. Foord, 142 Conn. 285, 294, and cases cited. A hypothesis in such instance is not evidence and consists of nothing more than the probability of a reasonable explanation of proven facts which is equally consistent with a finding of innocence as well as of guilt. Whether such a hypothesis of innocence exists or is valid rests solely in the reasonable judgment of the trier of the facts and cannot be made the subject of a claim of error. There was abundant and adequate evidence on which the court could find guilt beyond a reasonable doubt, and the judgment should stand.
 There is no error.
In this opinion PRUYN and DEARINGTON, Js., concurred.