STATE OF CONNECTICUT *v.* ROLAND J. PLOURDE

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 11-6993

.Argued March 29—decided September 3, 1965

*Paul B. Groobert,* of Manchester, for the appellant (defendant).

*Philip M. Dwyer,* prosecuting attorney, for the appellee (state).

PRUYN, J. Upon this appeal from his conviction of operating a motor vehicle while under the influence of intoxicating liquor, in violation of § 14-227a of the General Statutes, and of operating a motor vehicle while his right to do so was under suspension, in violation of § 14-215, the defendant has assigned error in the trial court's denial of his motions to dismiss for lack of a speedy trial, to set aside the verdict and for judgment notwithstanding the verdict, in its refusal to charge as requested, in its charge and in the admission of certain testimony.

The defendant was arrested on March 26, 1964, and summoned to appear before the Circuit Court on April 21, 1964, at which time the case was continued to May 12, 1964, when the defendant was advised of his rights and put to plea. He pleaded not guilty and elected a trial by a jury of twelve. The case was then assigned to a jury session on May 13, 1964. On July 7, 1964, the defendant filed his motion to dismiss on the ground that his constitutional right to a speedy trial had been violated. This motion was denied, without a memorandum, on July 28, 1964, and the defendant's trial commenced on July 30, 1964. The circumstances of each case determine whether a defendant's right to a speedy trial has

been violated. *State* v. *Holloway,* 147 Conn. 22, 25. We conclude that in this case this defendant's right to a speedy trial has not been violated.

Error is assigned in the failure of the court to comply with three requests to charge and in three portions of the charge as given. A charge is to be considered from the standpoint of its effect on the jury in guiding them to a correct verdict, is to be viewed in the light of the claims of proof of the parties, and must be tested by the finding and by that alone. *Kowal* v. *Archibald,* 148 Conn. 125, 129.

The finding reveals that the state offered evidence to prove and claimed to have proved the following: At 6:05 p.m. on March 26, 1964, Earl Johnson, a state trooper, found the defendant seated in his automobile, which was parked heading east on route 6A in the town of Hebron at the intersection of routes 6A and 85. The car was stationary in the eastbound lane near the center of the traveled portion of the highway with its engine running, the right turn signal flashing, and the gearshift lever in the "park" position or the emergency brake on or both. The defendant was alone in the car, slumped over the steering wheel, asleep. When the trooper opened the door on the driver's side, he smelled a moderate odor of alcohol. The defendant was a little wobbly when he stood beside the car, and his speech was slurred. While en route to the Colchester barracks, which took about twenty minutes, the trooper informed the defendant that he was under arrest. At the barracks, the defendant's manner of standing and walking was unsure. On the finger-to-nose test, the defendant was sure with his right hand and hesitant with his left; he was slow in picking up a coin. On being questioned at the barracks, the defendant thought he had encountered the trooper in Manchester. The defendant had started drinking in East

Hampton at about 2 p.m. and stopped drinking about 5:30 p.m. The defendant told the trooper that he had consumed about half a pint of whiskey. The defendant operated his car to the intersection of routes 6A and 85, intending to go to Marlborough. He had had seven and a half hours of sleep the previous night. He consented to a chemical test and gave a urine sample. Johnson informed the defendant that he could have a breath, blood or urine test and could have an additional test. The defendant did not avail himself of the option to have an additional test. The urine sample was given at 6:55 p.m. in a container provided by the trooper and then returned by the defendant to him. The trooper sealed and mailed it to the toxicological laboratory of the state health department, where it was received by the chief toxicologist, Dr. Abraham Stolman, with the seal intact. Dr. Stolman broke the seal and made an alcoholic analysis of the contents, which he found to be three-tenths of one percent of alcohol in the urine, which is equivalent to twenty-three hundredths of one percent of alcohol, by weight, in the blood. A person with twenty-three hundredths of one percent of alcohol, by weight, in his blood is under the influence of intoxicating liquor. For a person five feet nine or ten inches in height and of average build, such a concentration of alcohol represents alcohol from eleven to twelve ounces of 86-proof whiskey or from eleven to twelve 12-ounce bottles of beer. The defendant on the day in question imbibed such amounts. At 6:05 p.m., the defendant had such a concentration of alcohol in his blood as to be under the influence of intoxicating liquor. At some time during the course of the testing procedures, he asked for permission to telephone a lawyer. Not long after giving the urine sample, he telephoned his lawyer from the barracks. The defendant also telephoned his wife. He made in all two telephone calls to his

lawyer. On November 29, 1956, the department of motor vehicles had mailed a notice of license suspension, bearing that date, to the defendant at 682 Old Colony Road, Meriden, his address as shown on the records of the department. On March 14, 1963, the defendant wrote to the department that, his license having been suspended and his address on his last license being Old Colony Road, Meriden, he wished to apply for reinstatement. On June 10, 1963, the department replied, enclosing a form of petition for reinstatement. The suspension of license was still in effect on the date of trial.

The defendant offered evidence to prove and claimed to have proved the following: On March 26, 1964, he arose at about 2:30 a.m., drove his wife to work at 3:30 a.m., and then returned home. Without going to sleep, he left at 7 a.m. and worked, pouring concrete till noon. He had had only about two and a half hours of sleep the previous night. He left his car for repairs at 2 p.m. at East Hampton Service Center. From 2 p.m. to 3:15 p.m., he drank about five drinks of whiskey and ginger ale at the Candle Light Inn; at 3:15 p.m. he returned to the service center, had nothing alcoholic to drink, and left there at 5 p.m. for Willimantic on route 6A; at the intersection with route 85, he felt sleepy and pulled off the traveled portion of the highway; his ignition was off and the motor was not running. He had slept for about an hour when he was awakened by Johnson at 6:05 p.m. The trooper smelled a moderate odor of alcohol and told the defendant that he had had too much to drink. At this time the defendant was a little wobbly. On the way to the Colchester barracks, the trooper told the defendant he was under arrest for operating under the influence of liquor. On arriving at the barracks, the defendant asked to call his lawyer but was not permitted to do so till 7:30 p.m. Between 6:05 p.m. and 7:30 p.m., he submitted to

various physical and mental tests and also gave a urine sample; he was not permitted to be released on bond till between 9 and 9:30 p.m. He was not told by the state police that he could have a blood test or a breath test. After being released, he called two doctors in Colchester for a blood test, but neither was available; he then called Dr. Soreff of East Hampton and was told by him to go to the Middlesex Memorial Hospital; he went to the hospital, which refused to give him a blood test. The trooper did not remember the exact or approximate time the defendant asked to call his lawyer or whether it was before or after the urine sample was given. There was nothing unusual about the defendant's speech; he was capable of using the telephone. He was denied his constitutional right to call a lawyer after being charged with a crime, even though he asked to call a lawyer. At the time he asked to call a lawyer, he was in custody and the police were in the process of an interrogation which lent itself to eliciting incriminating statements and evidence; at no time did the police effectively warn him of his right to remain silent and to refuse all tests, chemical or otherwise, and he was prejudiced thereby. The urine sample was given at 6:55 p.m., and only one sample was given. Dr. Stolman could not express an opinion as to whether the defendant was under the influence at 6:05 p.m. and did say that the alcoholic content of the urine sample could be lower at 6:55 p.m. and that a urine sample can show a man to be under the influence when in fact he is sober. According to Johnson's report, the defendant's working clothes were soiled but not disorderly or mussed, the defendant was cooperative, he displayed no unusual actions, his eyes were not red or bloodshot, he did not sway or have sagging knees or fall, he did not stumble or stagger although his walking was unsure, he was not unsure though hesitant when he turned, he was able

to do the finger-to-nose test with his right hand but hesitatingly with his left, he was able to pick up a coin from the floor and to follow the trooper's instructions, and he was able to tell the correct date and time and that he was not under the influence. The defendant's car was in the "park" position of its gearshift lever, and the emergency brake was on. No one saw the defendant drive the car at 6:05 p.m. or prior thereto. There was no evidence of erratic driving by him, nor evidence that he was operating under the influence. The notice of suspension of his license and right to operate was never received by him.

The first of the claimed errors in respect to the charge has to do with right to counsel. The defendant requested the court to charge the jury as follows, basing his request on *Escobedo* v. *Illinois,* 378 U.S. 478: "An accused has the constitutional right to secure the assistance of his lawyer immediately after being charged if he asks for it. The time when an accused person really needs the help of a lawyer is when he is first arrested. If you find that the defendant's right was denied, you are instructed to find him not guilty." This request the court refused and instead charged the jury as follows, under the doctrine enunciated by us in *State* v. *Krozel,* 1 Conn. Cir. Ct. 549: "If you find as a fact that a request was made by the accused to call his attorney, then you must decide when it was made. If you find this request for an opportunity to communicate with an attorney was made but that it was made before the police had a reasonable opportunity to conclude their legitimate investigation, the police were acting within their rights in continuing their investigation and the defendant had no right to have his request granted before the investigation was concluded. If, however, you find that the request for an opportunity to communicate with his attorney was made after the

police had concluded their investigation and that this request was denied, and if you further find that the defendant was physically capable of talking to an attorney, this would constitute a denial of his rights under the 14th Amendment of the United States Constitution, and you should find the defendant not guilty if his constitutional rights were deprived in accordance with this instruction to you."

In *Escobedo,* it appeared that shortly after the petitioner's brother was fatally shot, the petitioner was arrested and taken to police headquarters; his retained lawyer soon arrived; his repeated requests to see the petitioner were denied, as were the latter's repeated requests to see his retained lawyer; the petitioner was not advised of his constitutional rights; he was not afforded any opportunity of consulting with his lawyer during the course of the entire investigation, during which he made statements implicating himself in the murder plot; an assistant state's attorney, an experienced lawyer, took the petitioner's statement by carefully framed questions. The statement was admitted in evidence at the trial, and the defendant was convicted of murder. The conviction having been affirmed by the Supreme Court of Illinois, the United States Supreme Court, on granting certiorari, reversed, saying (p. 490): "We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as

'made obligatory upon the States by the Fourteenth Amendment,' *Gideon* v. *Wainwright,* 372 U.S. at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

In *Krozel* we reversed the conviction of the defendant for operating a motor vehicle while under the influence of intoxicating liquor, where the defendant's request at the police station to telephone his lawyer was denied in accordance with a state police policy to lock up such an accused for four hours before releasing him on bond and to deny him access to a telephone during the time he was, in the opinion of the police, intoxicated, even though the defendant was capable of using the telephone, and where at the time he made the request his interrogation had been completed, all the reasonable demands of the police had been satisfied, and the charge against the defendant had been made out. We held that the defendant had been denied his constitutional right to counsel.

In the case before us, the various tests as well as the filling out of any questionnaires were part of routine police procedures in investigating the crime of driving while under the influence. Such procedures are essential to the determination by the police whether the driver is to be charged with the commission of the crime. Common sense dictates that the police do not have to close their eyes to evidence visually obtained before an accused obtains counsel. The results of tests, if favorable, would be for the benefit of the accused. Upon completion of these tests, the defendant was allowed to telephone a lawyer. The procedure was in an investigatory state, and there was nothing to indicate that it had become accusatory or that its purpose was to obtain incriminatory information from the defendant. We are not unmindful of recent cases in other jurisdictions

which appear to extend the *Escobedo* doctrine. Under the circumstances of the case before us, we conclude that the charge as given by the court on this point was correct.

The defendant also claims error in the court's denial of the following request to charge: "It is for you to find whether the defendant was operating the car when the police officer came upon him. Even if you find that the motor was running you may find that the defendant was not operating the car. For one thing there was testimony he was asleep at the time. I charge you that if he was asleep at the time he was not operating the car." In the leading case of *State* v. *Swift,* 125 Conn. 399, 403, the court defined the words "operate a motor vehicle" (§ 14-227a) by approving the trial court's charge to the jury that "[a] person operates a motor vehicle within the meaning of this statute, when in the vehicle he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." This definition was approved in the same language in *Commonwealth* v. *Uski,* 263 Mass. 22, 24, the court saying that it not only included the setting in motion of the operative machinery but also the driving of the car under the power of the operative machinery. In the case before us, there was no direct evidence of operation of the car by the defendant but only circumstantial evidence. It is "the universal rule that circumstantial evidence which affords the basis for an inference of guilt beyond a reasonable doubt may be sufficient to convict." *State* v. *Kreske,* 130 Conn. 558, 563; *State* v. *Lariviere,* 2 Conn. Cir. Ct. 221, 225; *State* v. *Pritchett,* 53 Del. 583, 593. In both *Lariviere* and *Pritchett* the facts were strikingly similar to those in the case at bar. In the former, the car was in the middle of a parking lot in a hazardous position; in the latter, the car

was stopped in the middle of a public highway at an intersection; in each case the motor was running, the accused was seated behind the wheel and slumped over the front seat, no one else was in the car, the officer had difficulty in arousing the accused, and it was impossible for anyone else to get into the driver's seat. In each case the accused was found to be operating the motor vehicle. "Defendant's car didn't reach the position where it was found by some magical process; no figure from outer space dropped it from the sky to Memorial Drive at its intersection with Bizarre Avenue, where it was found by the State Trooper; it had to have been 'operated' by someone to get it to the place where the Trooper found it, with the defendant in it. The evidence clearly indicated it was practically, if not wholly, impossible to conceive that any person, other than the defendant, could have gotten into the driver's seat, manipulated the gears and driven it to the spot where it was found, with the defendant sitting as he was in relation to the driver's seat and with his feet situated as they were." *State* v. *Pritchett,* supra, 598. The trial court correctly refused the defendant's request to charge.

The next error claimed in the charge concerns the court's instruction that the failure of a party to produce a witness whom it is within his power to produce and who would naturally have been produced by him permits an inference that the evidence of the witness would have been unfavorable to the party's cause and that such a witness is one who was known to the party and who by reason of his relationship to that party or to the issues or both could reasonably have been expected to have peculiar or superior information material to the case which would have been produced had it been favorable. The claims of proof of the defendant indicate that after he was released from the police barracks he called a Dr.

Soreff for the purpose of a blood test and was told by him to go to the Middlesex Memorial Hospital. Dr. Soreff was not produced as a witness. The charge as given was a correct statement of the law. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675. If the witness is available to both parties and is not one that a party would naturally produce, no such unfavorable inference may be drawn. Id., 676. There was no reason for the state to produce Dr. Soreff. This claim of error is without merit.

The third and last claim of error as to the charge relates to the refusal of the defendant's request to charge and to the charge as given in respect to the notice of suspension of his operator's license. As this claim of error was not pursued in the defendant's brief or in argument, we deem it abandoned and do not consider it.

The defendant next claims error in the admission of the testimony of Dr. Abraham Stolman, the state toxicologist, concerning the results of the analysis of a sample of the defendant's urine for alcohol, arguing that with adoption of the so-called implied consent law only the results of blood or breath tests may be admitted in evidence. Under § 14-227 as it existed prior to the enactment of the implied consent law (§§ 14-227a, 14-227b), it was well recognized that the results of a scientific test, be it blood, breath, urine or saliva, were admissible as competent evidence on the matter of intoxication where the method used had been established as reliable, the test had been properly administered, the results were correctly interpreted, and the accused had voluntarily submitted to the tests; their admissibility was dependent on the application of the rules of evidence; and the results of such tests were corroborative only and had no prima facie effect. See *State* v. *Munroe,* 22 Conn. Sup. 321, 323, 330, 1 Conn. Cir.

Ct. 5, 7, 13. The 1963 General Assembly by Public Act No. 616 repealed § 14-227 and substituted therefor § 14-227a. Such a repeal and substitution are merely an amendment and not the enactment of a new law. *State* v. *Fahy,* 149 Conn. 577, 581, rev'd on other grounds, 375 U.S. 85; *State* v. *Piekos,* 3 Conn. Cir. Ct. 278, 281. Under this amendment, it is expressly provided that evidence of the amount of alcohol in the accused's blood as shown by a chemical analysis of his blood or breath shall be admissible and competent under specific conditions and safeguards as set forth in the statute, shall have prima facie force and effect, and must be corroborated by additional competent evidence. There is no mention in the statute of a urine test. But that does not necessarily mean that such a test is excluded. There is nothing in the statute which provides that blood and breath tests are the exclusive chemical tests permitted. While the amended statute gives prima facie force only to evidence of the results of blood and breath tests in respect to certain percentages of alcohol, by weight, in the defendant's blood, "additional competent evidence . . . [must be] presented bearing on the question of whether or not the defendant was under the influence of intoxicating liquor." § 14-227a (b) (6). Such additional evidence might be observations by the arresting officer or other persons of the accused, the customary sobriety tests given by the police, and any other evidence which is competent under the rules of evidence, including the results of a urine test. Where medical evidence or the result of a urine test is presented, expert testimony is required, but such evidence has no prima facie effect. In the case before us, there being no breath or blood test, the provisions of the amended statute do not apply and competent evidence of whatsoever nature may be relied on, as prior to the amendment, to prove insobriety. The

court correctly admitted evidence of the results of the urine test.

In regard to the defendant's claims of error in the denials of his motion to set aside the verdict and for judgment non obstante veredicto, we have examined and tested the evidence, as indeed we must, in the same way as the jury in reaching a verdict; Maltbie, Conn. App. Proc. § 190; and we conclude that the jury could reasonably have reached their verdict that the defendant was guilty of the two offenses charged.

There is no error.

In this opinion KINMONTH and KOSICKI, Js., concurred.