STATE OF CONNECTICUT *v.* LOUIS HANUSIAK

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 7-24863

Argued June 13—decided October 28, 1966

*John A. Carrozzella,* of Wallingford, for the appellant (defendant).

*Edward B. Fitzgerald,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J. On March 2, 1966, the defendant was tried before a jury on charges of operating a motor vehicle while under the influence of intoxicating liquor, in violation of § 14-227a of the General Statutes, and of reckless driving, in violation of § 14-222. The jury returned a verdict of not guilty on each count. The verdict was accepted and ordered recorded by the court, and the defendant was discharged. On March 8, 1966, the state filed a request for a finding and a draft finding, limited to the sole question whether the defendant was operating a motor vehicle on a public highway on September 5, 1965, the date when the offenses charged in the information were alleged to have occurred. To this request the defendant filed, on March 15, a plea in abatement on the ground that the court had no jurisdiction to decide judicially the state's request for a finding because the defendant was discharged on March 2 and was not within the power of the court. The plea was overruled on April 13 and the finding made as requested by the state. From these actions of the court the defendant has appealed.

The defendant, in his assignment of errors, claims that the court erred in (1) overruling the defendant's plea in abatement; (2) making a finding of operation under § 14-227b after the defendant had been discharged; (3) making that finding of fact in a case tried to a verdict by a jury; (4) making a finding that was not in accordance with § 14-227b; and (5) acting in an administrative capacity and not exercising a judicial function in making the finding. Because the construction as to the validity and extent of § 14-227b has been raised for the first time on appeal in any court of this state, and we deem it of sufficient importance in the interests of justice to give our utmost consideration to all of the aspects of the issues as presented to us, we shall review them

in the order in which they were briefed and argued by the parties.

## I

The first two assignments are so closely linked that we can, for convenience, consider them together. The plea in abatement was directed toward a want of jurisdiction in view of the jury's finding of not guilty and the discharge of the defendant by the court. This action of the court was in conformity with our procedure. Practice Book § 481. Although a motion to erase, under § 94 of the Practice Book, would have been more proper than a plea in abatement (§ 93), because want of jurisdiction did appear on the record, a resort to the plea was not incorrect. If lack of jurisdiction of subject matter comes to the attention of the court, it is of no consequence how it is suggested, and the court may even act suo motu. *Felletter* v. *Thompson*, 133 Conn. 277, 279, 280. For a court to acquire and maintain the power to hear and determine a case, jurisdiction must exist in three particulars: the subject matter of the cause, the parties, and the process. *Mazzei* v. *Cantales*, 142 Conn. 173, 175.

In *State* v. *Carabetta*, 106 Conn. 114, the defendant had been found not guilty by the jury and was discharged. More than two months later, the state was granted the right to appeal, after having completed all the proceedings relative to the appeal. The defendant filed a plea in abatement to the appeal to which the state demurred. The demurrer was overruled. The Supreme Court stated the rule to be as follows (p. 116): "When the accused is acquitted, it is his privilege to move for discharge and the duty of the court to discharge the accused unless the State shall move for permission to appeal. When the court orders or permits the discharge, the accused is at liberty to depart, a free man, to go whither-

soever he may choose. If he shall go to another jurisdiction, he may not be brought again within this jurisdiction by process of extradition or otherwise since there is no longer a criminal charge against him. He cannot be put in jeopardy again for the crime of which he has been acquitted and discharged by the court. If he remains within the State, he cannot be again apprehended for a crime of which he has been acquitted and discharged. His bail would be discharged by his discharge by the court."

The prosecution contends that no jurisdictional question is raised by the application for a finding, and by the finding by the court, of operation of the motor vehicle by the defendant at the time and place alleged. Such a finding, it is claimed, does not conclude any rights of the defendant, because it affects only his operator's license, which is purely a personal privilege issued by the state on account of fitness. *Dempsey* v. *Tynan,* 143 Conn. 202, 207. Whether we call it a privilege or a right, qualified, regulated and restricted by the police power of the state, exercised under our motor vehicle statutes, is of no particular significance. There is no question that the commissioner of motor vehicles may suspend or revoke any operator's license or the right of any person to operate on the public highways of this state, for any cause that he deems sufficient, with or without a hearing. General Statutes § 14-111 (a). He may also cancel such a suspension or revocation, if the suspension was not for a definite term which was not completed, except as otherwise provided in subsection (k) of § 14-111, which empowers the commissioner, upon application, to hold a special hearing to determine whether to reverse a suspension or revocation.

Under certain circumstances, enumerated in § 14-111 (b), including conviction under § 14-227a,

the commissioner is required to suspend the operator's license for a period of not less than one year. Inferentially, but not expressly, such an order of suspension may be appealed to the Superior Court as provided in § 14-134. *Young* v. *Tynan,* 148 Conn. 456, 457. Such an appeal does not contemplate a trial de novo but only a judicial determination whether, upon the facts before him, the commissioner had mistaken the law, and so had acted illegally, or whether he had been arbitrary to the extent of abusing his discretion. *Dempsey* v. *Tynan,* supra, 206. Section 14-134 further provides that "[n]o appeal taken from the order of a court in a criminal case involving the operation of a motor vehicle . . . while under the influence of intoxicating liquor . . . shall act as a stay to any action of the commissioner." Section 14-227b, with which we are presently concerned, makes mandatory on the commissioner the suspension or revocation of an operator's license or his right to operate, even though he had been found not guilty, simply on the ground that he had refused to take one of the tests specified in § 14-227a. No appeal is provided from such an administrative action. Lacking any implementation in the statute for an ultimate judicial review affording ample protection against arbitrary or uninformed action by the commissioner, we cannot accept the claim of the state that the defendant has no standing and no ground for appeal from what must be regarded as a final judicial action by which he is aggrieved. We are of the opinion that the defendant's plea in abatement should have been sustained. *State* v. *Carabetta,* supra.

## II

The third, fourth and fifth assignments of error are so closely related that no separate discussion is necessary as to each of them. All of them attack

§ 14-227b, which conclusively implies consent of a motor vehicle operator to a chemical analysis of his blood and breath after he has been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor.[2] The crucial point raised by this appeal is the construction of this statute, both as to its legal effect and as to its constitutionality under the circumstances of the case before us. Our attention is directed particularly to the portion of the statute which reads: "If any such person [having been arrested for operating under the influence of intoxicating liquor and requested to submit to one of the designated chemical tests] refuses to submit to either a breath or blood test . . . , the test shall not be given, but if the court or jury, upon request, finds that such person was operating such motor vehicle, the commissioner of motor vehicles shall suspend or revoke his license or nonresident operating privilege, the terms and conditions of which shall be determined by said commissioner."

Such "implied consent" statutes have been enacted in many of our states and have been invariably upheld as a valid exercise of the police power in protecting the safety of the public, in its legitimate

---

[2] "Sec. 14-227b. IMPLIED CONSENT TO TEST. Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood and breath and, if said person is a minor, his parent or parents or guardian shall also be deemed to have given his consent. If any such person, having been placed under arrest for operating a motor vehicle under the influence of intoxicating liquor, and thereafter having been requested to submit to such test, refuses to submit to either a breath or blood test, at the option of such person, the test shall not be given, but if the court or jury, upon request, finds that such person was operating such motor vehicle, the commissioner of motor vehicles shall suspend or revoke his license or nonresident operating privilege, the terms and conditions of which shall be determined by said commissioner. The provisions of this section shall not apply to any person whose physical condition is such that, according to competent medical advice, such test would be inadvisable."

use of public highways, against intemperate, undisciplined and dangerous operators. See, e.g., *Lee* v. *State,* 187 Kan. 566; *Finocchairo* v. *Kelly,* 11 N.Y.2d 58, cert. denied, 370 U.S. 912; *Prucha* v. *Dept. of Motor Vehicles,* 172 Neb. 415; *State* v. *Batterman,* 79 S.D. 191; *Timm* v. *State,* 110 N.W.2d 359 (N.D.); *State* v. *Hedding,* 122 Vt. 379; note, 88 A.L.R.2d 1064. The objective of such statutes has been approved by the majority of the Supreme Court of the United States in *Breithaupt* v. *Abram,* 352 U.S. 432, 435 n.2 (analysis of blood sample used in evidence though sample taken while defendant was unconscious), and *Schmerber* v. *California,* 384 U.S. 757 (sample of blood taken against defendant's vocal protest). Where actual consent is obtained, there is no need to rely on the statute. *State* v. *Seager,* 178 Neb. 51; *State* v. *Auger,* 124 Vt. 50. And the taking of a blood sample while the accused is unconscious does not render the laboratory analysis inadmissible; *Breithaupt* v. *Abram,* supra (New Mexico law); unless the terms of the statute require, as a prerequisite, a real consent, by the person to be charged, to the type of test to be administered. *State* v. *Ball,* 123 Vt. 26, 30; *Bean* v. *State,* 12 Utah 2d 76; *State* v. *Burger,* 74 N.J. Super. 208, 214; *State* v. *Tarcha,* 3 Conn. Cir. Ct. 43, 46; see *State* v. *Towry,* 26 Conn. 35, 40.

Refusal to submit to a test designated by statute does not raise a presumption of guilt and is incompetent for such a purpose; *State* v. *Munroe,* 22 Conn. Sup. 321, 330, 1 Conn. Cir. Ct. 5, 14; *State* v. *Severson,* 75 N.W.2d 316 (N.D.); and such a refusal has been held to be a privilege accorded by the legislature, carrying only the penalty of suspension or revocation of an operator's license, but not in itself having relevance to a criminal conviction. *State* v. *Hedding,* supra. On the last point, that evidence of

the refusal violates the constitutional rights of the accused against self-crimination, there is some diversity of opinion, and such evidence has been held admissible for various reasons such as, chiefly, negation of the invasion of the constitutional right guaranteed under the fifth amendment because there was no compulsory disclosure by utterance; *Schmerber* v. *California*, supra; and similarity to any other voluntary statement, to be weighed and considered by the jury, or to an action of the accused revealing a consciousness of guilt. See comments in *State* v. *Munroe*, supra, on such cases as *State* v. *Bock*, 80 Idaho 296; *State* v. *Smith*, 230 S.C. 164; *People* v. *McGinnis*, 123 Cal. App. 2d Sup. 945; *State* v. *Nutt*, 78 Ohio App. 336; *State* v. *Benson*, 230 Iowa 1168; *State* v. *Gatton*, 60 Ohio App. 192.

Until the enactment of §§ 14-227a and 14-227b, the rule in this state had been that a person accused of operating a motor vehicle under the influence of intoxicating liquor could not be compelled to undergo a chemical test to determine the concentration of alcohol in his blood, and his refusal to do so could not be used in evidence against him unless it could be shown as a circumstance attending his arrest and as a verbal act, under such decisions as *State* v. *Tryon*, 145 Conn. 304, 308, and *State* v. *Tolisano*, 136 Conn. 210, 214. *State* v. *Munroe*, supra; *State* v. *Karasinski*, 3 Conn. Cir. Ct. 342.

We have been referred to no case, and have been unable to find any, which concerns the construction and enforcement of an "implied consent" statute such as ours, § 14-227b. Generally, in all of the cases reviewed, the revocation or suspension of an operator's license was implemented by administrative action without intervention of any judicial act; and subsequent proceedings by way of review were in the nature of an appeal from the administrative

decision. Cf. *Lee* v. *State,* 187 Kan. 566; *Prucha* v. *Dept. of Motor Vehicles,* 172 Neb. 415; *Finocchairo* v. *Kelly,* 11 N.Y.2d 58; note, 88 A.L.R.2d 1064. Where a defendant has been convicted by a jury of operating under the influence of intoxicating liquor and there was evidence of his refusal to submit to one of the prescribed tests, it has been held, under a Vermont statute, that the presiding judge shall suspend the defendant's operator's license for a period of six months. *State* v. *Hedding,* 122 Vt. 379. The court, in that case, apparently considered the suspension as an administrative rather than a judicial act. "The refusal to take such tests, however, is a privilege given to the respondent by the legislature. While it is true that by such refusal an accused may suffer a loss of the license granted him to drive an automobile by the State, such suspension, in itself, is not a conviction of a criminal offense." Id., 382.

Under the fourth and fifth assignments of error it is not a question of what the legislature has granted it may, for cause, take away; the question is whether the legislature can confer such administrative power on the courts. "Courts can constitutionally exercise only judicial functions. *State Water Commission* v. *Norwich,* 141 Conn. 442 . . . ; *Modeste* v. *Public Utilities Commission,* 97 Conn. 453, 458 . . . ." *State* v. *Doe,* 149 Conn. 216, 228. The constitutional division of powers of government into three distinct departments, the legislative, executive and judicial, has been thoroughly explored and exhaustively enunciated in *Norwalk Street Ry. Co's Appeal,* 69 Conn. 576. In that case, it was held that a statute which provided for an "appeal" to the Superior Court when municipal authorities failed to exercise, within a limited time, the legislative powers conferred on them in connection with the

double tracking of a street railway was unconstitutional, because such an appeal was not a process to invoke the judicial power but was merely an application to the court to exercise a legislative function. Id., 592, 603; see *State* v. *Huber,* 129 W. Va. 198; note, 168 A.L.R. 826.

There are areas, however, where a particular function, be it legislative or executive, may be "so near the border line of judicial power that its definition calls for subtle distinctions and its nature depends to an extent on the purpose and manner of its use." *Malmo's Appeal,* 72 Conn. 1, 5; *Norwalk* v. *Connecticut Co.,* 88 Conn. 471, 477. It has been said that it is difficult in a given case to define judicial powers and to discriminate between judicial and administrative functions in a way which will be applicable to every case. *State ex rel. Standard Oil Co.* v. *Blaisdell,* 22 N.D. 86; 16 Am. Jur. 2d 462, Constitutional Law, § 220; 14 Am. Jur., Courts, § 197. Even if the finding of operation authorized in this case under § 14-227b was close to the borderline between an administrative and a judicial function, we are of the opinion that it was well within the area of the latter. *State Water Commission* v. *Norwich,* 141 Conn. 442, 446. "Courts 'cannot impute to the Legislature an intent to pass an unconstitutional statute and a law should be construed, if it reasonably can be done, so as to make it valid.' *State* v. *Muolo,* 119 Conn. 322, 330 . . . ; *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 209; *Wilson* v. *West Haven,* 142 Conn. 646, 656 . . . ." *State* v. *Doe,* 149 Conn. 216, 229; see *State ex rel. Patterson* v. *Bates,* 96 Minn. 110; 16 Am. Jur. 2d 466, Constitutional Law, § 222.

## III

At least forty-seven states use chemical tests, including blood tests, to aid in determining the pres-

ence and degree of intoxication in cases involving charges of driving while under the influence of alcohol. *Breithaupt* v. *Abram,* 352 U.S. 432, 436 n.3. Twelve states have implied consent statutes, containing a provision for revocation of the operator's license or nonresident operating privilege upon a refusal to submit to a test prescribed by statute. LaPlante, "Alcohol Testing: Connecticut's Implied Consent Statute," 38 Conn. B.J. 16, 17. As in the case of every statute of a penal nature, § 14-227b must be construed with the strictness and precision that would not only preserve to the defendant the rights guaranteed by our federal and state constitutions but would accord with our constitutional limitations on the exercise of powers by our three separate magistracies. See *State* v. *Van Keegan,* 132 Conn. 33, 38.

"It is a universally accepted rule of constitutional law that the legislative department in the use of its police power is the judge, within reasonable limits, of what the public welfare requires. The court's function in examining the constitutional aspect of police legislation is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. If an enactment meets this test, it satisfies the constitutional requirements of due process and equal protection of the laws. *Schwartz* v. *Kelly,* 140 Conn. 176, 179 . . . ; *Carroll* v. *Schwartz,* 127 Conn. 126, 129 . . . . Courts cannot question the wisdom of police legislation is to decide whether the purpose a liberal discretion, especially in matters involving potentialities generally recognized as dangerous. *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 674 . . . ; *Beckanstin* v. *Liquor Control Commission,* 140 Conn. 185, 192 . . . ." *Pierce* v. *Albanese,* 144 Conn. 241, 249.

Under our implied consent statute, § 14-227b, it is provided, inter alia, that if a person under arrest for operating a motor vehicle while under the influence of intoxicating liquor refuses, after having been requested, to submit to either a breath or a blood test, at his option, the test shall not be given, but if the court or jury, upon request, finds that he was operating the motor vehicle, the commissioner of motor vehicles shall suspend his license or non-resident operating privilege.

We hold that § 14-227b contemplates that the finding of operation may be requested of and made by the trier of the facts. The meaning of the statute is clear that the trier to whom the facts and the responsibility for deciding them were submitted on trial is designated as the one to whom the request for a finding of operation must be made. To convict a defendant under § 14-227a, the state must prove beyond a reasonable doubt two indispensable elements, (1) operation of a motor vehicle by the defendant on a public highway while (2) he was under the influence of intoxicating liquor. Obviously, if the finding or verdict is "guilty," then no further inquiry is necessary, because operation must necessarily have been included thereunder. Where, however, as in the present case, the verdict was "not guilty," the statute authorizes a further finding, upon the state's request, as to whether the defendant was operating a motor vehicle at the time and place alleged. Such a finding, if the statute is to conform to our criminal procedure that the decision on the ultimate fact of guilt or innocence must be made by the trier of the facts, inevitably must rest with the trier, whether court or jury. No request for such a finding would conceivably be made by the defense after a "not guilty" verdict. The state is not empowered to request a court finding on operation

after the defendant, at his election, has been tried to the jury and, so far as appears, the jury have been discharged after acceptance of the verdict by the presiding judge. The defendant was entitled to a decision by the jury. See, e.g., *Butler* v. *Steck,* 146 Conn. 114, 116; *State* v. *Smith,* 138 Conn. 196, 204. As to the procedure followed, as stated above, the motion of the state for a finding of operation to be made by the court and the rendition of such a finding by the court were in error.

Because of our decision on the first, second, third and fifth assignments of error, we do not deem it necessary to discuss the fourth assignment.

There is error, and the case is remanded with direction that the plea in abatement be sustained and the finding of operation made by the court be set aside, and that further proceedings be taken to correct the judgment file so that it may accord with this decision.

In this opinion LEVINE, J., concurred.

JACOBS, J. (dissenting). The issue in this case involves a question of delegation of power. Simply put, it is this: May the legislature confer upon the courts the power to make a finding, after trial and acquittal, of operation or nonoperation of a motor vehicle where a person has been placed under arrest for operating while under the influence of intoxicating liquor (§ 14-227a) and "refuses to submit to either a breath or blood test" (§ 14-227b)? I think it can. The purpose behind our implied consent statute, § 14-227b, may be found in a fair reading of its provisions and the scheme designed by the legislature for realization of its purpose. The statute is reasonable. Drivers know in advance what is expected of them. By refusing to submit to the optional form of testing (breath or blood), the de-

fendant saw fit to thwart a clearly expressed legislative policy designed for the protection of users of our highways.

The trial court was not asked to take administrative action against the operator's license of the defendant or his privilege to operate; see 7 Am. Jur. 2d, Automobiles and Highway Traffic, §§ 109, 110, 120-130; 60 C.J.S., Motor Vehicles, § 160; nor was the court called upon, as it could not be under the circumstances of the case, to impose or apply criminal sanctions. All the court was asked to do was to make a finding of operation or nonoperation—an adjudicative fact—as an auxiliary remedial device in aid of the administrative agency. "Courts in a proper case may act in aid of the jurisdiction of the administrative agency where this does not involve decision of a controversy of which the agency has exclusive jurisdiction." 2 Am. Jur. 2d 678, Administrative Law, § 778. No conflict of jurisdiction appears here; only the administrative agency has control of and exercises exclusive authority over suspension or revocation of licenses.

I see no basis for the majority's writing into the statute a procedural limitation that the legislature did not include. Such a limitation might be justified to further some policy of the criminal law such as, for example, the right to a fair hearing or the right to be free from double jeopardy. No such policy considerations are involved here. On the contrary, the majority ruling seems to me to thwart a clearly expressed legislative policy—the policy of visiting administrative sanctions upon persons who refuse to submit to blood testing, even though those persons may be acquitted after trial. In other words, the statute we are considering does not fit into the conventional pattern, exemplified in *State* v. *Carabetta*, 106 Conn. 114, that no form of criminal punishment

may be applied against an accused after he has been discharged. The whole philosophy behind § 14-227b —its raison d'etre, one might say—is to provide some way of reaching out against an accused, though not as part of the criminal law, to prevent the obstruction of a fixed legislative policy. This reaching out, so to speak, is merely directed toward the suspension or revocation of the operating privileges of an accused. The ruling of the majority says that the finding of operation or nonoperation cannot take place unless it is made before the jury is discharged. I find nothing in the statute to warrant such a holding. I see no reason why the finding may not be made at any reasonable time after the conclusion of the trial, provided the defendant is given notice, is accorded a fair hearing and is not prejudiced by the delay. In other words, the emphasis ought to be oriented toward appropriate and proper safeguards to assure a defendant a fair hearing on the limited issue.

"Law enforcement is an art; it is not the mere unthinking application of mathematical absolutes." *National Labor Relations Board* v. *Eanet,* 179 F.2d 15, 21. Neither the executive nor the judicial branch of the government must be regarded by the other as an alien intruder; rather they are coordinate forces for the accomplishment of that art: law enforcement. See *United States* v. *Morgan,* 307 U.S. 183, 191. "Courts, no less than administrative bodies, are agencies of government. Both are instruments for realizing public purposes and both are law-enforcing agencies utilized by the legislature as such. They are not to be regarded as business rivals or competitors in the task of safeguarding the public interest." 1 Am. Jur. 2d 822, Administrative Law, § 18. "We must be wary against interpolating our notions of policy in the interstices of legislative provisions."

*Scripps-Howard Radio, Inc.* v. *Federal Communications Commission,* 316 U.S. 4, 11. "We are asked to shut our eyes to the plainest facts of our national life and to deal with the question of . . . [the interpretation of the statute] in an intellectual vacuum." *National Labor Relations Board* v. *Jones & Laughlin Steel Corporation,* 301 U.S. 1, 41. This we may not do.

The legislature having seen fit to delegate to the courts the power to make a finding of operation or nonoperation in cases of this kind, I see no reason or occasion to take a judicial hands-off policy. The defendant made no claim in his brief or on oral argument that he was in any way prejudiced by the delay or by lack of notice or by lack of a fair hearing on the issue of operation. In these circumstances, I would sustain the finding of the trial court.