## STATE OF CONNECTICUT *v.* ANONYMOUS (1971–8)

### APPELLATE DIVISION OF THE CIRCUIT COURT

KOSICKI, J. The defendant was tried before a jury of twelve on the sole charge of operating a motor vehicle on a public highway while under the influence of intoxicating liquor, in violation of § 14-227a of the General Statutes. Of this charge he was found guilty. The defendant moved to set aside the verdict, and the motion was denied. From the judgment rendered, the defendant has appealed.

We cannot overlook the irregularities in the procedure followed in pursuing this appeal, which are apparent from an examination of the record. The original finding of the trial court was drawn essen-

tially in the form of a finding of facts on an appeal in a court case. This was followed later by a "Corrected Finding, Jury Case." In this latter finding, the facts are stated as in a court case, but the court included, as well, the claims of the defendant pertaining to the asserted errors in the charge and in rulings on evidence. This portion of the finding was in conformity with the requirements of § 999 of the Practice Book and Forms 604, 819 (C) and 820 contained therein. The parties in this case acquiesced in the procedure followed and, to the extent that it is possible for us to do so, we shall consider the errors assigned in this appeal.

There is no substantial dispute over the facts on which the state and the defendant offered evidence and which they claimed to have proved on the trial of this case to the jury. The defendant, who was deaf as a result of spinal meningitis, needed the assistance of an interpreter during his trial. Because of the availability of a competent interpreter, because of the defendant's ability to read lips, and because of the use of his other sensory capacities, the defendant was aware of the proceedings. He is employed in a responsible position and is alert, poised and well educated.

On the evening in question, after leaving his office and while on his way to his home, he visited a restaurant. He remained there for about an hour and consumed some alcoholic drinks. Upon leaving the restaurant, he proceeded west, intending to drive to his home. As he approached an intersection, he was observed by a police officer stationed there on duty. The officer who had received a radio communication concerning the operation of a car like that of the defendant, stepped into the intersection, put up his hand and motioned for the defendant's car to stop. The vehicle did not stop and the officer had to step to his right to get out of its way. The

traffic behind the defendant's car had come to a halt in response to the officer's signal. The defendant proceeded through the intersection at approximately ten miles per hour. The officer moved rapidly along the driver's side and shouted at the operator to stop. The defendant turned and looked at the officer, gradually picked up speed, and continued west. The defendant appeared to be dazed and glassy-eyed, and his head was bobbing.

The defendant was next observed by a police officer in a cruiser. This officer, who had been alerted by radio communication, observed that the defendant's car was being operated erratically and was weaving and swaying. With his red light and siren in operation, the officer pulled up beside the defendant, blew his horn and motioned for the defendant to stop. The defendant looked at the officer but did not stop. There were no vehicles in front of the defendant, and traffic was moving between fifteen and twenty-five miles an hour. The officer finally stopped the defendant by pulling in front of his vehicle. Upon being asked, the defendant did not produce his license and registration.

The officer opened the door of the defendant's car, and the defendant stepped out. He had difficulty in keeping his balance, was stumbling, staggering, swaying, leaning against the car for support, and, at one point, fell over on top of the trunk. The officer detected a strong odor of alcohol. The defendant, after being placed in the police cruiser, attempted twice to get out. He was driven to police headquarters, arriving there at approximately 7 p.m. Both at the scene and at the police station, he was advised of his constitutional rights. This advice was given orally and in writing. The written document shown him at the scene was not retained by the officer and, therefore, was not offered in evidence. At the police headquarters, the defendant

was given the standard form of warning, of which we can take judicial notice, setting forth his constitutional rights, and was asked to read and sign it. This he refused to do. He was unsteady on his feet. He asked that his daughter be called, and the police contacted her by telephone.

The defendant was asked to perform walking and balance tests. In doing so, he swayed, staggered, fumbled, and almost fell over. He was in custody for about two and one-half hours. The officer who had stopped the defendant testified that the defendant vomited in the lavatory in the police station and that, in the officer's opinion, the defendant was under the influence of alcohol and unfit to operate a motor vehicle. The police communicated with the defendant by writing notes.

The defendant offered the testimony of a witness from the office where the defendant was employed. The witness held a master's degree and had worked for fifteen years in the field of education of the deaf. The testimony was to the effect that the defendant is a profoundly deaf person, receives no clues from sounds and, therefore, must learn to manipulate and communicate in his environment totally from a sense of sight. According to the witness, who did not profess to be a physician or to hold a degree in medicine, meningitis destroys the fluid in the semicircular canal of the ear, and this would affect the defendant's equilibrium and speech intonation. Normally, the defendant could walk and drive without any problem and he would not stagger while walking or weave back and forth on the highway. In the opinion of this witness, the defendant's responses were not merely characteristic of the deaf but also of the disadvantaged.

The defendant has assigned eleven claims of error directed toward the trial court's denial of the

defendant's motion to set aside the verdict; its failure to correct the finding; the admission in evidence of the defendant's refusal to submit himself to certain medical or chemical tests for the alcoholic content of his blood; the introduction of evidence concerning his performance of certain physical tests; the admission of opinion evidence of the arresting officers as to the defendant's sobriety; and the court's instructions to the jury.

We are of the opinion that one of the claimed errors is valid and is dispositive of this appeal. On his direct examination, as a state's witness, an arresting officer testified, against the defendant's objection, that he had offered the defendant an opportunity to take certain chemical sobriety tests of his blood, breath and urine, and that the defendant had refused.

In an earlier case, *State* v. *Munroe,* 22 Conn. Sup. 321, 330, 1 Conn. Cir. Ct. 5, 13, in which there was a conviction under § 14-227, the predecessor of the present statute, we held that evidence of a refusal to take any such chemical test was inadmissible but that, in view of the totality of circumstances, the error was harmless. The trial in that case was to the court without a jury. We stated: "In this state, there is no legislative sanction for the ascertainment of degrees of intoxication through scientific tests nor are there any legal presumptions as to the results obtained when such tests have been properly administered. The admissibility of the results of such tests depends on the application of the rules of evidence; and the failure to administer or the refusal to take such a test is of no probative value unless there are circumstances present, such as admissions by conduct, that would otherwise be admissible. Implicit in such testimony of refusal is the irremediable suggestion that had the test been given, the results

would have been as nearly infallible on the issue of intoxication, proving either guilt or innocence of the accused, as scientific ingenuity could devise, and, thus, from a mere refusal to submit to such test, fairly and reasonably, could be derived an inference of guilt. With this basic assumption we do not agree. The evidence objected to was incompetent for the purpose for which it was offered and should have been excluded." See also such cases as *State* v. *Sullivan,* 2 Conn. Cir. Ct. 412, 420; *State* v. *Karasinski,* 3 Conn. Cir. Ct. 342, 347-49.

After the rendition of the above decisions, § 14-227 was repealed and the present statute § 14-227a, was enacted, to take effect January 1, 1964. Public Acts 1963, No. 616. The further amendment of subsection (a) of § 14-227a has no application in this case. See Public Acts 1965, No. 219. Our present law, § 14-227a, provides for chemical tests such as the officer testified to, provided the defendant has consented thereto. Mere refusal to submit to such a test is not admissible in evidence where the issue to be determined is whether the defendant was operating a motor vehicle while under the influence of intoxicating liquor.

Inasmuch as the admission of the evidence objected to was erroneous, we cannot speculate as to whether it was prejudicial or harmful. The jury were not in any way instructed how to deal with it, and we are not required to ascertain whether there was sufficient other evidence on which the defendant could be convicted. "Where a conviction depends upon the unanimous vote of twelve members of the jury, it would be a rare case where an appellate court could say that there was no reasonable possibility that a given piece of evidence did not contribute to the finding of guilty." *State* v. *Miller,* 152 Conn. 343, 349.

Since our disposition of this appeal will necessitate a new trial, we consider it our duty to comment on some of the other claims of error which might arise on the retrial.

There is no merit to the defendant's claim of error in the admission of evidence of certain performance tests by him at the police headquarters. He had been warned of his constitutional rights both orally and in writing. He was not subjected to any testimonial compulsion. "There is no claim, either in his testimony at the trial or on this appeal, that he was subjected to any mistreatment, either physical or mental, that any promises or inducements were held out to him, or that he sought or was denied the advice of counsel before talking, apparently freely and unrestrainedly, with the police." *State* v. *Hassett,* 155 Conn. 225, 229.

There was no error in permitting the state to offer the opinion evidence of two police officers as to the defendant's sobriety. *State* v. *Jones,* 124 Conn. 664, 668, 669. Furthermore, the charge of the court on expert opinion evidence offered through the defendant's witness was not erroneous. The defendant in his brief does "not take issue with the substance of the court's charge on expert opinion evidence."

The defendant produced evidence of good character based on his reputation for truth and veracity. The court declined to charge in accordance with the request submitted by the defendant. The testimony offered was not through a witness who was a member of the community where the defendant lived. "Since the question related to general character, as distinguished from the specific trait or traits of character involved in the crimes charged, the question was inadmissible under the rule of *State* v.

*Campbell,* 93 Conn. 3, 10 . . . ." *State* v. *Blake,* 157 Conn. 99, 105. The defendant gains nothing by this assignment.

The defendant was not entitled to a requested jury charge concerning the "missing witness" rule. The request was not a correct statement of the law. The challenge was aimed at the failure of the prosecution to call a police lieutenant who was present during some of the incidents before and after the defendant's arrest. The record fails to show that his testimony, if produced, would have been other than cumulative, and the witness was equally available to both parties. The general rule is that, whether a potential witness is equally available to either party or not, no inference arises either for or against a party who fails to call a witness whose testimony would be merely cumulative. *United States* v. *D'Angiolillo,* 340 F.2d 453, 457, cert. denied, 380 U.S. 955; *United States* v. *Antonelli Fireworks Co.,* 155 F.2d 631, 639, cert. denied, 329 U.S. 742; *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 676; *Broderick* v. *Shea,* 143 Conn. 590, 593; *Ezzo* v. *Geremiah,* 107 Conn. 670, 677.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion CASALE and JACOBS, Js., concurred.